IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–03290–CNS–MDB


PALMER NORTH AMERICA LLC, a Delaware limited liability company,
      Plaintiff,

v.

WANZEK CONSTRUCTION INC., a North Dakota corporation,
MASTEC, INC., a Florida corporation,
      Defendants.

---

WANZEK CONSTRUCTION INC., a North Dakota corporation,
      Counterclaim-Plaintiff,

v.

PALMER NORTH AMERICA LLC, a Delaware limited liability company,
      Counterclaim-Defendant.

---

WANZEK CONSTRUCTION INC., a North Dakota corporation,
      Third-Party Plaintiff,

v.

EVRAZ NORTH AMERICA PLC,
      Third-Party Defendant,

---

**ORDER**

---

This matter is before the Court on Defendants' Motion to Compel Production of

Documents. (["Motion"], Doc. No. 208.) Plaintiff has filed a response in opposition to the

Motion (Doc. No. 232) to which Defendants have replied (Doc. No. 237.) After reviewing the Motion, briefing, and relevant law, the Court **ORDERS** that the Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

This case arises out of an approximate $300 million contract between Palmer North America LLC ("Palmer") and Wanzek Construction, Inc. ("Wanzek"), by which Wanzek would serve as the general contractor for the expansion of Palmer's rail production facility in Pueblo, Colorado (the "Project"). (*See generally* Doc. No. 76.)

Palmer claims Wanzek failed in its obligations as general contractor, created delay and unnecessary costs, and interfered with Palmer's ability to complete the project. Its claims are based on both pre-termination and post-termination conduct. (*See* Doc. No. 76; Doc. No. 98; Doc. No. 104 at 27:17–22 (finding that "post-termination…plaintiff has sufficiently alleged that the intention at that point was somehow to retaliate and interfere with the plaintiff's ability to proceed with completing the project. So on claim number five the motion to dismiss is denied.").) Eventually, Palmer issued a Notice of Default, terminated Wanzek, and filed the instant litigation. (Doc. No. 1.) Palmer "intends to present the opinions of a damages expert and anticipates that its damages will be in excess of $130 million." (Doc. No. 51 at 7.)

Wanzek contends it was wrongfully terminated. (Doc. No. 208 at 2.) It also says Evraz NA Plc ("Evraz") provided Wanzek with a $75,000,000 parent Guaranty ("Guaranty") to induce Wanzek into executing the contract with Palmer. (*Id.*) As relevant to this dispute, Wanzek argues the Guaranty "'may not be modified, amended, revised, revoked, terminated, changed or varied in any way whatsoever,' or assigned without Wanzek's express written consent." (*Id.*)

Earlier this year, Atlas Holdings ("Atlas") announced its intent to acquire Evraz and its subsidiaries (which potentially include Palmer). (*See* Doc. No. 208-1.) Soon thereafter, Wanzek reached out to Palmer requesting that it supplement prior disclosures and discovery responses with information and documents concerning the acquisition ("Deal Documents").[1] (*Id.*) Palmer has produced some, but not all, Deal Documents. The instant Motion seeks complete production of the Deal Documents, along with two legal memoranda related to the same. (Doc. No. 208 at 4–5.) The Court has already grappled with this dispute and offered preliminary observations. (*See* Doc. Nos. 169, 205.) Accordingly, it granted Wanzek leave to include a request for fees, in the event the Court granted the motion to compel.

Palmer opposes the Motion, arguing it already produced all "responsive" documents, and that the remaining Deal Documents are not relevant or responsive to prior discovery requests. (Doc. No. 232 at 9–16.) It also asserts privilege over the legal memoranda. (*Id.*) The Court will address the request to compel first, then the fee request.

## ANALYSIS

### I.    Motion to Compel

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

The party seeking production has the initial burden of showing relevance. *See Chung v. Lamb*, 2017 WL 10619941, at *3 (D. Colo. Oct. 24, 2017) (citing *Johnson v. Kraft Foods N.*

---

[1] As used in this Order, the phrase "Deal Documents" includes all documents listed on pages four and five of this Order, *except for* the two legal memoranda.

*Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006)). However, when discovery appears relevant on

its face, or when the moving party has satisfied that burden, the responding party bears the

burden of establishing that the requested discovery (1) does not fall within the scope of relevant

evidence, or (2) is of such marginal relevance that the potential harm of discovery is outweighed

by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004). Relevance is

broadly construed. The discovery is relevant "if there is 'any possibility' that the information

sought may be relevant to the claim or defense of any party." *Sheldon v. Vermonty*, 204 F.R.D.

679, 689–90 (D. Kan. 2001); *see also Carbajal v. Warner*, 2013 WL 1129429, at *3 (D. Colo.

Mar. 18, 2013) (same). If the information is relevant and proportional to the needs of the case,

then a court will consider whether there is any other basis to withhold, such as privilege.

In this Motion, Wanzek seeks the following Deal Documents and legal memoranda:

i.   The complete Securities Purchase Agreement with executed versions of all
     exhibits identified on Page v of the Securities Purchase Agreement, including
     Exhibit A-1 "Form of Payment Entitlement Agreement," Exhibit A-2 "Form of
     Letter Agreement," Exhibit B "Debt Reorganization Actions," and Exhibit C
     "Corporate Reorganization Actions;"

ii.  An unredacted Seller Disclosure Schedule;

iii. The "Payment Entitlement Agreement" identified in Section 2.2(b) of the
     Securities Purchase Agreement;

iv.  Certificates evidencing the equity interests, as identified in Section 3.2(a) of the
     Securities Purchase Agreement;

v.   Counterparts to the Payment Entitlement Agreement and the Letter Agreement, as
     identified in Section 3.2(c) of the Securities Purchase Agreement;

vi.  The Intercompany Agreements, and evidence that the Intercompany Agreements
     have been terminated, as identified in Section 3.2(g) of the Securities Purchase
     Agreement.

     vii.    Documents (including email correspondence) reflecting any evaluations and valuations of Palmer's claims and liabilities concerning the litigation, including any financial statements or reserves set aside with respect to the litigation, as identified in the purchase agreement. And a 22-page and 3-page memoranda created by the buyer's counsel in January of 2025 as part of the sale diligence process. This would also include any diligence memoranda that were provided to

(Doc. No. 208 at 5-6.) Wanzek argues that "any evaluations or valuations performed in connection with the sale are relevant to Palmer's and Evraz's representations about the strengths and weaknesses of the claims and allegations in the litigation, Wanzek's mechanics' lien, and Palmer's damages." (*Id.* at 6.) Indeed, "Palmer's damages expert calculated one of Palmer's claims for $74 million by looking at the value of the Project upon the termination." (*Id.*) Wanzek also argues the documents are relevant to demonstrating whether Palmer and Evraz sought to avoid, modify, or assign certain obligations under the contract and Guaranty, because it appears Evraz may have sold all holdings. (*Id.*) And because Palmer was acquired in the sale and is now known as a different entity, Rocky Mountain Steel Mills LLC, the Deal Documents will clarify Palmer's status and may require amendment of the pleadings. (*Id.* at 6–7.) Wanzek also claims Palmer waived objections.

## A.  Waiver

The Court begins by considering whether Wanzek waived its objections and arguments concerning the Deal Documents.

In July of this year, Wanzek brought the Deal Documents dispute to this Court. (*See* Doc. No. 166 at 8 (raising, an "outstanding request for documents issued to Palmer arising from the recently announced sale of Evraz Inc. NA, an affiliate of two parties to this litigation, Palmer and Evraz North America Plc.").) Palmer responded, in writing, as follows:

> ***There is no pending dispute regarding Wanzek's request for certain deal documents*** relating to the potential acquisition of Evraz Inc. NA by Atlas Holdings. Wanzek's attempt to create a dispute simply because Evraz did not produce the requested documents within Wanzek's arbitrary six-day timeframe is not a basis on which to seek relief. Evraz understands its discovery obligations, and has already confirmed to Wanzek that it will produce responsive documents, if any exist, as soon as such documents are available to be produced. To be clear, Evraz will supplement its production once any requested documents are identified and collected.

(*Id.* at 7-8 (emphasis added).) The Court interpreted these statements to mean there were no disputes over the Deal Documents. (*See generally* Doc. No. 169 at 5:14-6:4.) Nevertheless—and out of an abundance of caution—the Court asked the parties to confirm:

> ***It seems to me that there's a concession from Palmer here that the information is relevant****, that you're going to produce it at some point, that it's in your custody. And so I don't really see an issue there other than perhaps the timing of it.* It sounds like Palmer is contending that, I think—again, this wasn't expressed in your status report—but based on the position that Wanzek described, it sounds like you're contending that you've got to wait until the deal closes before you can produce anything, which frankly, it doesn't seem logical to me. *The request seems to be much broader than failed docs or closing docs. It's valuations and other materials that are relevant to that.* So I don't see why you can't produce it before the close.

(*Id.* (emphasis added).) This is how Palmer responded:

> Well, I can answer that, Your Honor. This is Mr. Thompson. So far as I'm aware, the deal closed last night at midnight. We didn't put that in the papers because we were trying—it's non-public. I mean there's news reports out there on it. In fact, I'm only relying on a YouTube report right now that it closed 12 hours ago or thereabouts because it's going to involve a wholesale change in management. And even the person that Mr. Gehring and I are reporting to is leaving the company. So we have some logistical challenges here. ***You hit it on the head in that we're not saying we aren't responding; really more of a timing issue. And we felt like we needed to pull the documents once we understood, number one, if the deal was going to close because that would impact whether there were changes in liability and responsibility. That's what they were asking about on the parent side. But yeah, we're going to produce responsive documents. We're not trying to stand in the way of that.***

(*Id.* at 6:5-23 (emphasis added).) During this hearing, Palmer made no relevance objection, no objection as to the timing of Wanzek's requests, and no relation-back argument. In short, Palmer gave the Court every indication that it would produce the Deal Documents without issue.

Now, Palmer emphasizes the word "responsive" to suggest it was preserving some objection at the time. But objections cannot be surmised by the Court, they must be expressly stated. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (saying "arguments may be deemed waived when they are advanced ... only in a perfunctory manner" (internal quotation omitted)).) And even if the word, "responsive" signaled a forthcoming objection, counsel's many other words signaled the exact opposite. For example, saying, "[y]ou hit it on the head," in response to the Court's understanding of the discovery issues, and stating that Palmer is not "trying to stand in the way" of production, and claiming that the lack of production is "really more of a timing issue," demonstrate there were no forthcoming objections. (*See* Doc. No. 169 at 6:5-23.) Moreover, Palmer's counsel said he was waiting to understand if the deal would close to determine liability and responsibility, (*id.*), which demonstrates he understood the scope of the request and basis for it. That makes the failure to object knowing. Thus, the Court concludes that any arguments or objections that might have been made to avoid producing the Deal Documents, were waived.[2]

## B.  Relevance and Discoverability

Although waived, the Court will nevertheless address Palmer's arguments and objections, for completeness. Palmer argues that "defendants do not explain why" Plaintiff's "nonprivileged

---

[2] For the reasons set forth below, the Court finds this waiver only applies to the Deal Documents, not the legal memoranda.

representation about the strength and weaknesses of claims and defenses," are relevant. (Doc. 231 at 13-14.) This is a fair criticism. A party's representation about the weakness or strength of their litigation claims is nothing more than argument. But that is not the only relevance claim Wanzek makes. Wanzek also argues the Deal Documents may reflect the value of the Project, which is implicated by Plaintiff's own damages calculation. The Court agrees. The damages in this case are tied to the value of the Project, and the Deal Documents are likely to inform that analysis.

Next, Palmer argues the "experts did not rely on any valuation incident to the sale transaction in providing their opinions in this case." (*Id.* at 14.) But that conflates the issues. The experts may not have relied on a valuation "incident to the sale," but they clearly opine on the value of the Project, which as noted already, is likely reflected in the sale documents.

Palmer also argues, "the sale transaction documents do not contain any reference to, or other indication that, the construction contract or the Evraz Owner Guaranty was assigned or transferred." (Doc. No. 231 at 14.) But that is precisely why Wanzek seeks to discover the documents—to determine "*whether* Palmer or Evraz circumvented … their obligations under the Contract or Guaranty through the sale." (Doc. No. 208 at 6 (emphasis added).) Additionally, Wanzek is entitled to have clarity on the surviving entities, and—as Wanzek points out—it could require amendment to the pleadings.

Palmer makes other conclusory assertions that the information is not relevant, but none are persuasive. As to Palmer's relation-back argument, it appears the request for Deal Documents does indeed relate back to at least two Requests for Production ("RFP")—RFP 14 and 15—which contemplate financial records and documents that reflect capital investment. And

though it's true that those prior RFPs were not a precise fit, the circumstances were unique and there were more appropriate ways to address the misfit. *See infra at* 13–14.

In sum, whether waived or overruled, Palmer's objections do not save the Deal Documents from production.

### C.  Claim of Privilege Over Legal Memoranda

In addition to the Deal Documents, Wanzek seeks the production of two legal memoranda prepared by the buyer's counsel as part of the sale diligence process.

Palmer asserts privilege and work product protections. Wanzek argues Palmer has no standing to claim a privilege that belongs to the buyer, Atlas. (Doc. No. 237 at 7 (citing *In re Bacon v. Archer*, 2019 WL 2269722, at *3 (D. Colo. May 24, 2019).) Wanzek also argues that any claim of privilege is waived because the buyer shared the memoranda with Palmer and Evraz prior to the sale. (Doc. No. 237 at 8.) Palmer counters that sharing memoranda with trial counsel is not a waiver, particularly because it occurred after the sale transaction—at a time when counsel had already become counsel for the new owner as well. Palmer also says, "the legal memoranda are protected by the common interest privilege because the buyer and seller have a common interest with respect this litigation. (Doc. No. 232 at 15–16 (citing *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 469 (Col. Ct. App 2003).)

As a threshold matter, the Court finds Palmer did not waive claims of privilege during the August 1, 2025, hearing before this Court. At that time, Palmer was not presented with—and the Court did not believe there to be—any pending request for legal memoranda. (*See generally* Doc. Nos. 166, 169.) Thus, the Court substantively addresses Palmer's privilege claims for the first time in this Order.

"The party resisting discovery on grounds of privilege or the work product doctrine bears the burden of coming forward with facts that would sustain its claim" and "must establish all elements of the privilege." *Obeslo v. Great-W. Cap. Mgmt., LLC*, 2017 WL 10591346, at *1 (D. Colo. Feb. 21, 2017); *see Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("[A] mere allegation that the work product doctrine applies is insufficient"). Attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citations omitted).

Privilege can be waived through voluntary disclosure to a third person. *See People v. Lesslie*, 24 P.3d 22, 26 (Colo. App. 2000). "A party asserting waiver of a privilege has the burden of establishing the waiver." *In re Gibco, Inc.*, 185 F.R.D. 296, 298 (D. Colo. 1997) The "common interest doctrine" acts as a limited exception to waiver of the attorney-client privilege if (1) the communications were made in the "course of a joint-defense effort" and (2) the communications "were designed to further that effort." *Obeslo, LLC*, 2017 WL 10591346, at *4 (quoting *In re Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042-43 (10th Cir. 1998)).

Here, the documents at issue are legal memoranda prepared by a lawyer, for a client, for the purpose of conveying legal advice. (*See* Doc. No. 232 at 5.) In other words, the memoranda are quintessential work product that contain privileged communications. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare

his client's case.").[3] Thus, the relevant question is whether Wanzek has satisfied its burden to show these protections are waived. *See In re Gibco, Inc.*, 185 F.R.D. at 298. The parties devote just a handful of paragraphs to this issue, but it appears the legal memoranda were only provided to counsel who advised the privilege-holder at different points in time. To be sure, the Court cannot definitively conclude this from the sparse information before it, but it can conclude that Wanzek has not satisfied its burden to prove waiver.[4] Thus, the Court will not order the production of the legal memoranda at this time.[5]

## II.    Request for Fees & Costs

The rules contemplate, and indeed require, fee shifting where appropriate. *See generally* Fed. R. Civ. P. 37(a)(5)(A). Specifically, Rule 37 authorizes a party to move to compel discovery, and if the motion is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

---

[3] Additionally, based on the outcome of the transaction, it appears counsel is indeed objecting on behalf of the actual privilege-holder.

[4] Moreover, even if Wanzek had proven waiver, the memoranda were prepared in January, 2025, while this litigation was pending and during a time when the parties shared a common enterprise. Again, the Court cannot definitively conclude the common interest doctrine applies, but it notes the inquiry would not end at waiver.

[5] Palmer also seems to claim privilege/protection over certain redacted portions of the Seller's Disclosure. (Doc. No. 232 at 15.) However, that claim is entirely unsupported. Palmer simply argues the redactions protect sensitive and confidential information—not privileged information. (*Id.* (arguing, "[t]he redactions were made to protect *highly sensitive* and *confidential* information that is not responsive in any way to any request for documents in this litigation," but failing to argue privilege or work product).) The Protective Order (Doc. No. 72) sufficiently addresses concerns over sensitive and confidential information, and there is no reason to withhold the disclosure or any portion of it. Thus, the parties should consider the Seller's Disclosure to be part of the Deal Documents, and accordingly, part of the required production.

motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). There are some exceptions to this

mandate, including where: "(i) the movant filed the motion before attempting in good faith to

obtain the disclosure or discovery without court action[6]; (ii) the opposing party's nondisclosure,

response, or objection was substantially justified; or (iii) other circumstances make an award of

expenses unjust." *Id.*

Rule 37 is not the only authority for curbing evasive discovery practices. Rule 26(g)

requires an attorney to certify that all discovery responses are complete, consistent with the rules,

warranted by applicable law, and not unreasonable. Fed. R. Civ. P. 26(g)(1)(A)–(B). Moreover,

objections cannot be interposed for an improper purpose such as delay or increased litigation

costs. *Id.* And "[i]f a certification violates this rule without substantial justification, the court, on

motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose

behalf the signer was acting, or both. The sanction may include an order to pay the reasonable

expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis

added).

Thus, in determining whether fee shifting is appropriate, the Court's primary

consideration is whether Palmer's positions were substantially justified. *See* Fed. R. Civ. P.

37(a)(5)(A)(ii); *see also* Fed. R. Civ. P. 26(g)(3).

Here, Palmer represented to this Court several months ago that the only barrier to

disclosure was the timing of the deal closing. (Doc. No. 169 at 6:5–23.)) After that, Palmer

---

[6] Because Wanzek was granted leave to file its request for fees contemporaneously with the
motion to compel, no additional conferral was necessary.

seemed to pivot, emphasizing that it only agreed to produce "responsive" documents. (Doc. No.

205.) The Court expressed concerns:

> …it sounds like … relevance arguments, which you didn't really make at
> the last hearing. I mean, we went through this whole conversation. I just
> pulled up the transcript to look at everything we discussed. And we were
> talking about the—well, you were talking about the logistical challenges,
> the problems with producing information before the closing occurred. And
> the big issue was that because the closing hadn't occurred, you didn't
> really have access, these documents didn't exist, but you didn't really
> make any types of relevance arguments. And so I ordered production of
> this. And *it seems like you're backtracking now* and trying to make
> relevance arguments that you didn't really raise before. So why shouldn't I
> just consider those waived and order you to produce all the documents, not
> just excerpts, but all the documents that are responsive?

(Doc. No. 205 at 11:1-19 (emphasis added).) Yet despite its preliminary concerns, the Court

reserved judgment on the issue. It sought to give Palmer a full and fair opportunity to explain its

seemingly contrary positions, and perhaps convince the Court that Palmer had a reasonable basis

to withhold. But the briefing and record confirm the Court's initial inclinations: Palmer made

technical arguments to withhold documents it committed to producing.

Specifically, Palmer argues that Wanzek's prior discovery requests do not cover the Deal

Documents. Although Wanzek's prior discovery requests are sufficiently broad, it is true that

none *specifically* target the Deal Documents. However, the reason for that is obvious. The Deal

Documents did not exist when the prior requests were served. And if Palmer had been

forthcoming about its position from the beginning, Wanzek could have moved to reopen

discovery, expand discovery limits, and serve targeted requests. At that point, Palmer could have

objected, and perhaps made very compelling arguments that there was insufficient good cause to

reopen and expand discovery.

But Palmer did not do that. Instead, Palmer represented to this Court that there was no dispute at all. Then it claimed delay, then it claimed the information was already produced, and then finally, when the Court pushed for an explanation, Palmer explained that its commitment to produce responsive documents, necessarily meant it would withhold all other documents that did not fit squarely into previously served, pre-Deal Document, RFPs. The Court recognizes the importance of linking discovery responses to actual written discovery requests, but the parties and the Court could have worked through that concern together, had it been raised sooner. Instead, when Wanzek tried to raise it with the Court, Palmer blocked it by expressly disavowing any kind of dispute.

Confirming your intent to produce, expressly telling the Court there is no dispute over the production, then waiting until the issue reaches the Court several times over, before making a technical argument to avoid production, is—as kids like to say—"kinda sus." This type of lie-in-wait approach makes discovery more difficult than it needs to be and it violates the letter and spirit of the Federal Rules of Civil Procedure. Under the circumstances of this case and in light of the history and representations made to opposing counsel and this Court, Palmer was not substantially justified in withholding the Deal Documents, and Wanzek is entitled to fees and costs associated with this Motion.[7]

---

[7] This is true even though the Court upholds Palmer's privilege and work product objections on two documents. *See* Fed. R. Civ. P. 37(a)(5)(C) (providing that if a motion to compel is granted in part and denied in part the court may "apportion the reasonable expenses for the motion"). *Cf. Smith v. Trujillo*, 2022 WL 593953, at *13 (D. Colo. Feb. 28, 2022) (declining to award fees on a partially granted motion to compel where the respondent's objections were based on "rational legal argument"). Palmer had ample opportunity to narrow the dispute to the two documents where its position was actually justified.

However, the Court will not award *all* fees and costs associated with this Motion. It would be unjust for Palmer to bear all expenses when this Motion might have been brought anyway (although meaningfully narrowed) as to the two legal memoranda that Palmer *is* substantially justified in withholding. Thus, the Court will only award partial fees and costs. Wanzek shall file a motion for fees and costs, attaching a supporting affidavit as required under Local Rule 54.3(a), and proposing an apportionment of fees and costs that is reasonable, fair, and consistent with the Court's conclusions in this Order.[8]

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Compel Production of Documents (Doc. No. 208) is **GRANTED in part and DENIED in part**. Plaintiff is directed to produce the Deal Documents, but not the legal memoranda. It is further

**ORDERED** that Defendants' request for attorneys fees is **GRANTED**. However, the Court holds the amount in abeyance pending further briefing by the parties and a supporting affidavit from Defendants. Defendants' motion shall be filed on or before **December 5, 2025;** response due by **December 19, 2025**; reply due by **December 23, 2025.** The motion shall not exceed three pages (exclusive of the affidavit), the response shall not exceed five, and the reply shall not exceed two.

---

[8] The motion shall not argue why Wanzek is entitled to fees and costs, as that has already been addressed here.

Dated this 14th day of November, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge