IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-03290-CNS-MDB

PALMER NORTH AMERICA LLC,

     Plaintiff,

v.

WANZEK CONSTRUCTION INC., and
MASTEC, INC.,

     Defendants.

_____

WANZEK CONSTRUCTION INC.,

     Counterclaim-Plaintiff,

v.

PALMER NORTH AMERICA LLC, et al.,

     Counterclaim-Defendant.

_____

WANZEK CONSTRUCTION, INC.,

     Third-Party Plaintiff,

v.

EVRAZ NORTH AMERICA PLC,

     Third-Party Defendant.

---

**ORDER**

---

1

Before the Court is the Motion to Strike Palmer and Evraz's Demands for Jury Trial or in the Alternative, Bifurcate the Trial brought by Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Wanzek Construction, Inc. and Defendant MasTec, Inc. ECF No. 259. Plaintiff and Counterclaim-Defendant Palmer North America LLC and Third-Party Defendant Evraz North America PLC filed a response brief opposing the requested relief, ECF No. 283, and Wanzek and MasTec filed a reply, ECF No. 338.

For the reasons explained further below, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

On May 14, 2021, Palmer North America LLC (Palmer) and Wanzek Construction, Inc. (Wanzek) entered into a construction contract as part of Palmer's expansion of a rail production facility at a steel mill located in Pueblo, Colorado. *See* ECF No. 76-1 (the Agreement) at 2.[1] As the parties acknowledge, Palmer and Wanzek are each sophisticated business entities that were represented by outside counsel and engaged in extensive negotiations in connection with the Agreement. *See, e.g.*, ECF No. 259 at 6–7, ECF No. 283 at 12; *also see* ECF No. 76-1 § 36.2 ("This Agreement is the result of negotiations between [Palmer] and [Wanzek], and has been reviewed by [Palmer], [Wanzek], and their respective counsel."). Neither Palmer nor Wanzek's parent company was a signatory to the Agreement.

---

[1] Pincites to page numbers in a docket entry refer to the ECF header and not internal pagination.

However, in connection to the Agreement's execution, Evraz North America PLC (Evraz) and MasTec Inc. (MasTec), the parent companies of Palmer and Wanzek respectively, each entered into a parent Guaranty with their counter-party's signatory subsidiary to the Agreement. ECF No. 12-1 (Evraz Guaranty) at 1, ECF No. 76-2 (MasTec Guaranty) at 1.[2] The Evraz Guaranty between Evraz and Wanzek was entered into on May 20, 2021, ECF No. 12-1 at 5, and the MasTec Guaranty between MasTec and Palmer was entered into on May 18, 2021, ECF No. 76-2 at 6. Both the Agreement (on behalf of Palmer) and the Evraz Guaranty were signed by Skip Herald, the CEO of Evraz.[3] ECF 76-1 at 106; ECF 12-1 at 5. For Wanzek, the Agreement was signed by Rob Lee, ECF No. 76-1 at 106, and for MasTec, the MasTec Guaranty was signed by Paul DiMarco, ECF No. 76-2 at 6. Below, the Court describes provisions of the Agreement and the parent Guaranties relevant to the instant motion.

*First*, the Agreement contains a provision titled "Waiver of Jury Trial," which states that "[e]ach Party hereby waives the right to a trial by jury in any litigation action or Dispute." ECF No. 76-1 § 31.4. The Agreement defines the "Parties" as Palmer and Wanzek, *id.* at 12, and states that "references to a 'Party', '[Palmer]' or '[Wanzek]' shall

---

[2] These citations identify the executed versions of the parent Guaranties. *See* ECF Nos. 12-1, 76-2. However, for ease of reference, the Court also cites to the unexecuted versions of the parent Guaranties throughout this Order, which are attached as Exhibits to the executed Agreement. *See* ECF No. 76-1 at 781–85 (the unexecuted MasTec Guaranty), 787–91 (the unexecuted Evraz Guaranty).

[3] The Court accepts the unrefuted representation made by Wanzek and MasTec that both the Agreement (on behalf of Palmer) and the Evraz Guaranty were signed by the same person: Skip Herald. *See* ECF No. 259 at 13. However, the Court notes that while the Agreement contains a signature from "Skip Herald," ECF No. 76-1 at 106, the Evraz Guaranty was signed by "James F. Herald," ECF No. 12-1 at 5. Despite this discrepancy, the Court assumes that both documents were signed by Skip Herald given that (1) the title beneath each signature is identical, and (2) neither Palmer nor Evraz make any attempt to correct this representation in their response.

include their respective successors and permitted assigns," *id.* § 1.2(e). Notably, neither provision indicates that reference to a "Party" in the Agreement also includes that Party's parent company or Guarantor.

*Second*, the Agreement defines itself as including "this agreement [the construction contract] between the Parties, which is comprised of the Contract Documents." *Id.* § 1.1 at 12. The Agreement then specifies that the "Contract Documents" includes (a) the Agreement; (b) Appendices to the Agreement, including schedules and attachments thereto; (c) the Exhibits; and (d) any attachments, amendments, variations, additions, and/or to any of the foregoing. *Id.* § 1.1 at 13, § 1.3. The Agreement also states that the defined Contract Documents are "incorporated by referenced [into the Agreement] as if fully set forth herein." *Id.* § 1.3.

*Third*, both parent Guaranties are attached as "Exhibits" to the Agreement. *See* ECF No. 76-1 § 1.3; *id.* at 780–85 (the MasTec Guaranty, attached as Exhibit B-1 to the Agreement), 786–91 (the Evraz Guaranty, attached as Exhibit B-2 to the Agreement). Thus, the parent Guaranties signed by Palmer and MasTec on the one hand, and Wanzek and Evraz on the other, are each "Contract Documents" incorporated in the Agreement.

*Fourth*, the Agreement expressly states that the parent Guaranties were entered in connection with execution of the Agreement. *See id.* §§ 12.13, 14.1.[4] Likewise, each

---

[4] Section 12.13 refers to the Evraz Guaranty and states that "[Palmer] shall provide [Wanzek] with a guarantee from [Evraz] as security for the faithful payment by [Palmer] of the Contact Price when properly due and payable under this Agreement up to a maximum amount of Seventy-Five Million US Dollars (US $75,000,000.00) in the form attached as Exhibit B-2." ECF No. 76-1 § 12.13. Section 14.1 refers to the MasTec Guaranty and states that "[Wanzek] shall provide a duly executed guaranty in the form attached as Exhibit B-1 from [MasTec], at the time of execution of this Agreement and as a condition precedent to [Palmer] incurring any obligations or liabilities to [Wanzek]." ECF No. 76-1 § 14.1.

parent Guaranty provides that it was entered "in consideration of and *as a condition [of]*" the Parties "*entering into the Agreement.*" *Id.* at 781, 787 (emphasis added).

*Fifth*, each Guaranty states that its respective signatory parent company will "derive benefit" from the Agreement to which its subsidiary entered. *Id.* at 781, 787. The Guaranties also permit the parent companies to enforce all of their respective subsidiaries' defenses arising under the Agreement. *See* ECF No. 76-1 at 782 ("[MasTec] shall be entitled to any defenses that are available to [Wanzek] under the Agreement"); ECF No. 76-1 at 788 ("[Evraz] shall be entitled to any rights, set-off, counterclaims, and other defenses that are available to [Palmer] under the Agreement")].

## II.     LEGAL STANDARD

### A.  Whether Federal Law or State Law Applies

As an initial matter, the parties dispute whether federal law, state law, or some mix of each governs the Court's analysis of the jury waiver at issue here. Palmer and Evraz contend that Wanzek and MasTec improperly apply state law in the motion's analysis of the waiver. *See* ECF No. 283 at 11 n.3. On reply, Wanzek and MasTec argue that while federal law determines the jury waiver's validity and enforceability, understanding the contractual scope of the waiver is a matter of the relevant state law's contract interpretation principles. ECF No. 388 at 9–10. Explained below, Wanzek and MasTec are correct.

The Tenth Circuit has made clear that consistent with the Seventh Amendment, "[t]he right to a jury trial in the federal courts is governed by federal law." *See Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir.1988) (citing *Simler v. Conner,*

372 U.S. 221, 221–22 (1963) (per curiam)). Accordingly, "the question of whether a party has waived its right to a jury trial [] is a question of federal law." *Moreno v. Qwest Corp.*, No. 13-cv-00103-RM-MEH, 2013 WL 2444720, at *2 (D. Colo. June 5, 2013). This means federal law is applied to determine the validity and enforceability of a jury waiver. *See, e.g.*, *In re Cnty. of Orange*, 784 F.3d 520, 524 (9th Cir. 2015) ("[F]ederal courts should apply federal law to determine the validity of a waiver of a right to a jury trial.").

However, before the Court can assess the enforceability of the jury waiver in this case, it must first determine the scope of the waiver to see what parties it covers. *See, e.g.*, *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (before considering whether a contractual jury waiver was "knowing and voluntary," a court must consider whether the party seeking to invoke the waiver met "their initial burden of showing that petitioner was personally bound by the jury waiver provision"). Doing so requires applying the relevant state law's contract interpretation principles. *See id.* at 580–82 (applying state law to assess whether "petitioner was bound by the jury waiver provision even though he did not execute the [agreement containing the jury waiver] in his individual capacity"); *see also, e.g.*, *Branta, LLC v. Newfield Prod. Co.*, No. 15-cv-00416-WYD-KLM, 2017 WL 1435882, at *4 (D. Colo. Apr. 24, 2017), *aff'd*, No. 15-cv-00416-WYD-KLM, 2017 WL 4333990 (D. Colo. July 14, 2017) (the scope of a jury waiver turns on contract interpretation principles as "a matter of state law"); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 684–85 (S.D.N.Y. 2018) ("Because the enforceability of a jury waiver provision . . . is a procedural issue, a federal court sitting in diversity generally applies federal law in determining whether the right has been waived. On the other hand, [state]

6

contract law applies to the interpretation of the scope of the jury waiver provisions based on the choice-of-law provisions in the relevant agreements.") (citations omitted).[5] The Court follows this approach in its analysis and outline of the legal standard detailed below.

### B. Legal Standard for the Enforceability of Contractual Jury Waivers

"The right to a jury trial as declared by the Seventh Amendment is preserved inviolate." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1222 (10th Cir. 2013) (citing *J.R. Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102, 1115 (10th Cir. 2009)). As a result, waivers must be strictly construed, and courts must "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash,* 301 U.S. 389, 393 (1937); *see also, e.g.*, *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, No. 09–CV–1113 WJ/RLP, 2010 WL 11552917, at *4 (D.N.M. June 24, 2010) (as "the right [to a] jury trial is fundamental," "the Court will strictly construe the clause waiving the right to a jury trial, and will limit the scope of the waiver to the [waiver's] express language") (citations omitted).

Rules of Civil Procedure 38 and 39 govern a party's invocation of a jury trial waiver in federal court. Rule 39(a) provides, in relevant part:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so

---

[5] Although the Court is unable to find a definitive statement from the Tenth Circuit addressing this question in the context of a contractual jury waiver, it notes that the Tenth Circuit regularly takes a similar approach when considering the scope of contractual provisions that waive parties' constitutional rights in other contexts. *See, e.g.*, *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) ("The scope of the arbitration agreement, including the question of who it binds, is a question of state contract law. . . . [O]ur task in these circumstances is to determine whether the relevant state's high court would permit the nonsignatory to enforce the arbitration clause.") (citation omitted).

demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39(a); *see also* Fed. R. Civil P. 38(a).

Nevertheless, "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy," so long as the waiver is entered "knowingly and intentionally." *Telum, Inc.*, 859 F.2d at 837 (citation omitted). To be enforceable, a contractual jury waiver must not be "the result of a gross disparity in bargaining power" and must be "conspicuous" in the contract. *Rasure v. Sitter*, No. 06-cv-01522-ZLW-BNB, 2007 WL 4458119, at *2 (D. Colo. Dec. 11, 2007) (citing *Telum,* 859 F.2d at 837).

As noted above, before the Court can consider the enforceability of a jury waiver, it must first apply state contract law to interpret the waiver and determine to which parties it applies. *See, e.g.*, *Branta*, 2017 WL 1435882, at *4 (citing *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015)). Here, the Agreement provides that it "shall in all respects be governed by and construed in accordance with the laws of the State of Colorado." ECF No. 76-1 § 36.8. The parent Guaranties likewise provide that each "shall be governed by Colorado law." *Id.* at 784 (MasTec Guaranty); *id.* at 790 (Evraz Guaranty). No party suggests that any state law other than Colorado law applies. Thus, the Court applies Colorado law where relevant below. *See, e.g.*, *Branta*, 2017 WL 1435882, at *2.

### III.    ANALYSIS

Before turning to their arguments, a summary of the parties' live claims and jury demands in connection with each is useful:

- Palmer brings claims against Wanzek and MasTec individually. *See* ECF No. 76 (Second Amended Compl.).[6]

- Wanzek asserts counterclaims against Palmer. *See* ECF No. 103 at 14–15 (Wanzek's Answer and Counterclaims to the Second Amended Compl., which incorporates counterclaims pleaded in Wanzek's first answer at ECF No. 78).

- Wanzek brings a claim against Palmer's parent, Evraz, in a Third-Party Complaint. *See* ECF No. 12 (Third Party Compl.).

- In connection with all of the claims brought by or against them, Palmer and Evraz demand a jury trial. *See* ECF No. 76 ¶ 72; ECF No. 61 at 11; ECF No. 81 at 29.

- Neither Wanzek nor MasTec have made a jury demand.

- Neither of the parent companies, MasTec and Evraz, assert any claims of their own. Rather, each parent has been brought into the litigation only by the opposing party's subsidiary asserting a claim against it.

Against this backdrop, Wanzek and MasTec bring the instant motion requesting that the Court strike Palmer and Evraz's jury demands, or in the alternative, bifurcate the trial such that the claims between Wanzek and Palmer are decided via a bench trial, and the claims involving Evraz and MasTec are tried by a jury. *See* ECF No. 259. Wanzek and MasTec argue that it would be improper to hold a jury trial on all claims in this case because the Agreement's jury trial waiver is enforceable not only as to the claims between Wanzek and Palmer as signatories to the Agreement, but also as to the claims involving their respective parent companies arising from the parent Guaranties. *See generally id*.

---

[6] Specifically, Palmer asserts a single claim against MasTec for breach of the MasTec Guaranty (Count III), ECF No. 76 at 11–17, and its remaining claims are asserted against Wanzek only. The Court previously dismissed Palmer's fourth claim against Wanzek for Tortious Interference with Contract and Business Relations in connection with Wanzek's partial motion to dismiss. *See* ECF No. 98 at 2.

In response, Palmer and Evraz argue that because the parent companies, Evraz and MasTec, were not Parties to or signatories of the Agreement, and because the parent Guaranties do not contain a jury trial waiver, Evraz and MasTec have not waived their right to a jury trial and cannot be forced to do so. *See* ECF No. 283 at 11–20. Palmer and Evraz further contend that since "a jury trial is required for the claims involving MasTec and Evraz, the entire case should be tried to a jury." *Id.* at 8. Finally, Palmer and Evraz propose that, if the jury waiver is found to be enforceable in part, then, rather than bifurcate the trial, the Court should seat a jury to "render a verdict on the claims involving MasTec and Evraz, and serve in an advisory capacity under Rule 39(c) as to the claims involving only Palmer and Wanzek." *Id.*

Below, the Court first considers the scope of the Agreement's jury trial waiver and its enforceability as to (1) the claims and counterclaims brought by and between Palmer and Wanzek, (2) Palmer's claim against MasTec, and (3) Wanzek's third-party claim against Evraz. After resolving the scope and enforceability of the waiver as to each, the Court then considers the parties' competing proposals as to whether a trial in this action should be bifurcated or whether all claims should proceed via a single trial with a jury serving in an advisory capacity as needed.

For the reasons explained below, the Court finds that the jury waiver is enforceable as to the claims between Palmer and Wanzek, as well as for Palmer's claim against MasTec. However, the waiver is not enforceable as to Wanzek's claim Against Evraz. Additionally, although the Court determines that bifurcation would not be appropriate in

10

this case, it seeks additional input from the parties on whether sitting an advisory jury pursuant to Rule 39(c) is permissible.

### A. Application of the Jury Waiver to the Claims Between Palmer and Wanzek

Palmer does not dispute the existence of the jury waiver or the fact that it would apply and be enforceable if Palmer and Wanzek were the only parties in this dispute.[7] Despite this, Palmer resists Wanzek's attempt to enforce the waiver as to the claims between the two subsidiary companies based on, essentially, judicial economy grounds. Accordingly, the Court analyzes the jury waiver's application and enforceability and, for the reasons explained below, finds that the waiver applies to the claims between Palmer and Wanzek in this action.

1. *Scope of the Jury Trial Waiver*

As an initial matter, there is no doubt that the Agreement's jury waiver applies to the claims brought by Palmer and Wanzek against the other. In Colorado, "[g]eneral contract interpretation principles apply to jury waiver provisions in civil cases." *Leech v. Larson*, No. 17CA1471, 2018 WL 11715162, at *8 (Colo. App. Dec. 20, 2018) (citing *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 27 (Colo. App. 2010)). Contracts are interpreted "to determine and effectuate the parties' intent and reasonable expectations at the time the contract was made." *Bd. of Cnty. Comm'rs of Boulder Cnty.*

---

[7] In the response, Palmer and Evraz acknowledge that when reviewing the Agreement and parent Guaranties, "the language of the contracts and the way they are supposed to work together clearly demonstrate that [] the types of disputes involving Palmer and Wanzer . . . would be subject to a jury waiver." ECF No. 283 at 6; *see also id.* at 3–4 ("[B]y its plain language, the [Agreement] between Palmer and Wanzek, including the jury waiver at § 31.4 of that contract, applies **only** to Palmer and Wanzek.") (emphasis in original); *see also id.* at 24 (describing case law where a contractual jury trial waiver was "valid" as to the contracting parties as "akin" to the facts presently "before this Court").

*v. Crestone Peak Res. Operating LLC*, 538 P.3d 745, 750 (Colo. 2023); *see also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (contract interpretation requires ascertaining "the parties' mutual intent" while ensuring that the contract is construed "consistently with the well-established principles of interpretation") (citation omitted). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000) (citing *USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)).

By its explicit terms, the Agreement's jury waiver provision applies to each "Party" to the Agreement. *See* ECF No. 76-1 § 31.4 ("Each *Party* hereby waives the right to a trial by jury in any litigation action or Dispute.") (emphasis added). And, as Palmer acknowledges, the term "Party" is defined in the Agreement's preamble as including both Palmer and Wanzek. *See* ECF No. 283 at 8 (citing ECF No. 76-1 at 12). Considering the Agreement's plain language, it is clear that the parties intended that the jury waiver apply to a litigation action, like this instant action, brought by Wanzek and Palmer under the Agreement. *See Ad Two*, 9 P.3d at 376*; see also, e.g.*, *Branta*, 2017 WL 1435882, at *3 (utilizing defined terms in a contractual jury waiver to determine to which parties the waiver applied).

2. *Enforceability of the Jury Trial Waiver as to the Claims Between Palmer and Wanzek*

The Court next considers whether the jury waiver is valid and should be enforced as to the claims between and against Palmer and Wanzek, or whether it would be "unconscionable, contrary to public policy, or simply unfair" to do so. *See Woodward, Inc.*

*v. ZHRO Sols., LLC*, No. 18-cv-01468-PAB-STV, 2019 WL 1438076, at *2 (D. Colo. Mar. 31, 2019) (quotation marks omitted).

To determine whether a contractual jury trial waiver is knowing and intentional, and thus enforceable, courts "consider several factors . . . including: (1) the conspicuousness of the waiver; (2) the level of sophistication and experience of the contracting parties; (3) the negotiation of the contract's terms; (4) the relative bargaining power of the parties; and (5) whether counsel represented the waiving party." *Kulasa v. Wyndham Worldwide Operations, Inc.*, No. 19-cv-00561-NRN, 2019 WL 13453921, at *1 (D. Colo. Dec. 23, 2019) (citing *Moreno v. Qwest Corp.*, No. 13-cv-00103-RM-MEH, 2013 WL 2444720, at *2 (D. Colo. Jun. 5, 2013)); *see also PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, No. 06-cv-00125-PSF-BNB, 2006 WL 1775599, at *1 (D. Colo. June 26, 2006) (same). These factors are "not dispositive." *Id.* Instead, the "ultimate question is whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Woodward*, 2019 WL 1438076, at *2 (quotation marks omitted).

Considering these factors, it is clear that Palmer and Wanzek knowingly and voluntarily agreed to the Agreement's jury trial waiver and, as a result, the waiver is enforceable as to the claims between them. Here, the jury trial waiver is conspicuous, "written in the same typeface as the rest of the agreement, and the provision is offset by [a] bolded heading," *Woodward*, 2019 WL 1438076, at *2, which states "Waiver of Jury Trial," ECF No. 76-1 § 31.4. Additionally, there is no indication of any disparity between the Parties' relative bargaining power, as Palmer and Wanzek each acknowledge that the

Agreement was entered into by "sophisticated" entities. *See* ECF No. 259 at 6, ECF No. 283 at 12, 16 n.5, 19.[8] This same is confirmed in the Agreement, which states that it is the result of "negotiations between [Palmer] and [Wanzek], and has been reviewed by [Palmer], [Wanzek], and their respective counsel." ECF No. 76-1 § 36.

As there is no indication that the Agreement's waiver is "unfair, unreasonable, or beyond the party's ability to understand," and Palmer does not argue otherwise, the Court finds "no error in upholding the jury waiver." *Leech*, 2018 WL 11715162, at *8 (citation omitted). Considering similar circumstances, other courts have enforced jury trial waivers. *See, e.g.*, *Woodward*, 2019 WL 1438076, at *3–4. Accordingly, consistent with the above, the motion to strike is granted as to Palmer's claims against Wanzek and Wanzek's counterclaims against Palmer.[9]

---

[8] In the motion, Wanzek and MasTec describe "Wanzek, Palmer, and their parent companies" as "sophisticated commercial parties with equal bargaining power." ECF No. 259 at 6. In response, Palmer and Evraz similarly refer to the litigants as "sophisticated parties." *See* ECF No. 283 at 12, 16 n.5, 19.

[9] Without addressing these factors, Palmer nevertheless argues that "the entire case," including the claims brought only between Palmer and Wanzek, should be tried by jury because a "jury trial is required for the claims involving MasTec and Evraz" and "[i]t only makes sense to try the issues on the contract and on the parental guarantees, which are intertwined and overlapping, at the same time." ECF No. 283 at 8. This argument is not persuasive. Although a court should not "construe [a] contract entered into by sophisticated parties after full negotiation in a manner which would frustrate the intent of the parties," *City & Cnty. of Denver v. Dist. Ct. In & For City & Cnty. of Denver*, 939 P.2d 1353, 1361 (Colo. 1997) (citing *Public Serv. Co. v. United Cable Television, Inc.,* 829 P.2d 1280, 1285 (Colo. 1992)), that is what Palmer asks. Proceeding with a jury trial on all claims would, in essence, require that the Court override the Agreement's waiver for practical concerns. As Palmer provides no persuasive authority for this position, the Court declines to do so. *See, e.g.*, *Branta*, 2017 WL 4333990, at *8 ("[I]f a party . . . elects to enforce [a] contractual right to which both parties agreed, then the Court must adhere to the language of the contract."); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (If a "litigant does not challenge [a jury waiver] provision as being the product of fraud, we see no reason to replace the agreed upon mode of dispute resolution with another.") (discussing *Telum*, 859 F.2d at 837–38).

14

**B. Application of the Jury Trial Waiver to Claims Against MasTec and Evraz as Parent Companies and Non-Signatories to the Agreement**

Having determined that the waiver is enforceable as to the claims between and against Palmer and Wanzek, the Court turns to the more contentious request that the jury waiver be enforced as to the claims against the parent companies, Evraz and MasTec, even though neither signed the Agreement. ECF No. 259. Wanzek and MasTec put forth two primary arguments as to why it should: (1) the interrelatedness of the Agreement and parent Guaranties, the express terms of each, and the circumstances surrounding their execution support enforceability; and (2) the close relationship between the parent companies and their respective subsidiaries support finding that the waiver extends to the parent. The Court considers these arguments below, analyzing first the interrelatedness and relationship between the Agreement and the parent Guaranties, before turning to Palmer's claim against MasTec, and finally, Wanzek's claim against Evraz.

1. *Interrelatedness of the Agreement and the Parent Guaranties*

As an initial matter, the Court is satisfied that the parent Guaranties, which are attached as Exhibits to the Agreement, are integrated and thus incorporated by reference into the Agreement. "In Colorado, for an incorporation by reference to be effective, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022) (citing *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010)); *see also In re Seymour's Marriage,* P.2d 1172, 1175 (Colo. App. 1975) ("So long as it is clear what document is being referred to and that the parties intended for it to be a part of the [contract], . . . it is as effectively a part thereof as

15

if recited therein."). Where, like here, a document is "explicitly named" in a contract and "included as [an] exhibit," the exhibit can be incorporated by reference into the underlying contract. *See, e.g.*, *Veolia Water Techs., Inc. v. Antero Treatment LLC*, 564 P.3d 1089, 1103 (Colo. App. 2024), *cert. granted in part*, 2025 WL 2506082 (Colo. Sept. 2, 2025).

Here, each parent Guaranty was attached as an "Exhibit" to the Agreement, and each Exhibit is explicitly defined as a "Contract Document" that makes up part of the Agreement. ECF No. 76-1 § 1.3; *id.* at 781–85, 787–91. Both parent Guaranties were also directly attached to the Agreement. *See* ECF No. 76-1 at 780–85 (Evraz Guaranty); *id.* at 786–791 (MasTec Guaranty). This is sufficient to find that the parent Guaranties have been "clearly and expressly identified" and are thus incorporated by reference into the Agreement. *French*, 509 P.3d at 449; *see also id.* at 450 (discussing *Evans v. Bayles* as an example of where incorporation by reference was warranted because the "IRA application" contained "multiple, clear references" to a separate brokerage agreement, which left "no doubt as to [the] identity" of the brokerage agreement or its terms) (citing 787 S.E.2d 540, 544 (W. Va. 2016)).

However, the same cannot be said for whether the parent Guaranties incorporate the Agreement or its terms. As Palmer and Evraz correctly note, without more, incorporation cannot go both ways. ECF No. 283 at 16 n.5. Indeed, although the Agreement identifies Exhibits that are incorporated by reference into the construction contract, *see* ECF 76-1 at § 1.3, neither parent Guaranty contains similar language. Instead, the parent Guaranties only reference the Agreement generally. Such general references are insufficient to incorporate the entire Agreement into the parent Guaranties

16

and bind the parent companies—let alone specific enough to incorporate the Agreement's jury waiver provision (which is not even mentioned in the parent Guaranties). *See, e.g.*, *U.S. for Use of DDC Interiors, Inc. v. Dawson Const. Co.*, 895 F. Supp. 270, 273–74 (D. Colo. 1995), *aff'd*, 82 F.3d 427 (10th Cir. 1996) (declining to find incorporation by reference of a waiver provision where the "incorporation by reference of the [] contract's disputes clause [was] general rather [than] specific").[10] Moreover, it is beyond dispute that MasTec and Evraz only signed their respective parent Guaranty and were not signatories to the portion of the Agreement that actually contains the jury waiver. Thus, the Guaranties' omission of any language to "clearly and expressly identif[y]" and incorporate the Agreement or its waiver provision is fatal to any argument that parent companies agreed to be bound by the waiver. *French*, 509 P.3d at 449; *see also PostNet*, 2006 WL 1775599, at *3 ("Incorporation of the jury waiver clause by reference is not sufficiently conspicuous to be enforced.").[11]

In sum, the Court finds that the Agreement and the parent Guaranties are interrelated, and that the Agreement clearly integrates the parent Guaranties. However, due to the lack of language in the parent Guaranties to demonstrate MasTec or Evraz's assent to the waiver, the Court finds that neither parent company is bound by it.

---

[10] That the parent Guaranties entitle the parent companies to certain of their subsidiaries' rights or defenses under the Agreement, *see* ECF No. 76-1 at 782, 788, does not change the Court's conclusion. Even if this language could be construed as integrating some provisions of the Agreement into the Guaranties, such language does not encompass or extend to the jury waiver provision. A jury waiver is not a defense and, in any event, this language does not demonstrate a clear, knowing and voluntary waiver of the parent companies' Seventh Amendment right to a jury trial.

[11] Notably, each Guaranty also contains an integration clause stating that each "Guaranty contains the entire agreement of the parties relating to the subject matter." ECF No. 76-1 at 784, 790.

17

2. *Palmer's Claim Against MasTec*

a. *Scope of Palmer's Agreed Upon Contractual Waiver*

In light of its conclusion that the Guaranties are integrated into the Agreement, the Court next considers the scope of the jury waiver to determine whether the waiver extends to Palmer against MasTec under the MasTec Guaranty.

As noted above, the jury waiver provides that "[e]ach Party hereby waives the right to a trial by jury in any litigation action or Dispute." ECF No. 76-1 § 31.4. Palmer urges that this provision is "extremely narrow" because, as discussed above, it "expressly appl[ies] only to "[e]ach Party" to the Agreement. ECF No. 283 at 13. Although the Court agrees that the express terms of the waiver bind only Palmer and Wanzek as Parties to the Agreement, the Court disagrees that this provision is "narrow" or necessarily limited only to the claims brought by a Party to the Agreement *against* another Party to the Agreement for two reasons.

*First*, although the parties' briefing offers little guidance on how to interpret the specific language in the waiver, the Court finds that its plain language demonstrates that it was intended to apply to a wide range of claims. As discussed above, the waiver, by its plain terms, binds only Palmer and Wanzek as "Parties" to the Agreement. ECF No. 76-1 at 12, § 31.4. However, there is no language in the waiver or Agreement to suggest that Palmer or Wanzek (as Parties to the Agreement) intended to limit the jury waiver only to claims asserted *against* another Party. Nor does the plain language expressly limit the waiver to claims arising from the Agreement, though such a limitation is logically implied

18

in a contractual provision.[12] *See, e.g.*, *Trizna v. Colorado Prod. Servs., LLC*, No. 18CA0662, 2019 WL 13575357, at *3 (Colo. App. June 13, 2019) ("[T]erms and conditions may be implied in a contract when necessary to achieve the parties' intent.") (citing *Brown v. Hoffman*, 628 P.2d 617, 622 (Colo. 1981)).

The omission of any such limiting language is significant, as such restrictions are often found in contractual waivers analyzed by courts.[13] In fact, courts considering comparatively more narrow waiver provisions have found that such waivers cover claims that do not directly arise from the contract, so long as such claims are related to the contractual subject matter. *See, e.g.*, *Painting Co. v. Walsh/DeMaria Joint Venture III*, No. 2:09-CV-0183, 2010 WL 1027424, at *2 (S.D. Ohio Mar. 12, 2010) (a jury waiver provision stating that the party waived its "right to a trial by jury in *any or all disputes or claims arising out of or in relation to* the contracts" extended to "claims relate[d] to work

---

[12] However, even if it were, it would be unlikely to change the Court's conclusion given that the Agreement is defined as including its Exhibits which, as discussed, includes the parent Guaranties.

[13] Despite its best efforts, the Court is unable to find any cases analyzing a jury waiver analogous to the one presented here (i.e., a waiver that was not limited by its terms only to disputes arising from or related to a contract, or that was otherwise limited only to claims brought by and against the contracting parties). Even where courts find contractual waivers to be broad in scope, such waivers still ordinarily include some kind of limiting language that is not present here. *See cf., e.g.*, *Woodward*, 2019 WL 1438076, at *2 (analyzing a jury waiver providing that "[e]ach Party irrevocably waives, to the fullest extent allowed by applicable law, the defense of an inconvenient forum in any such action or proceeding and any right it may have to a trial by jury"); *Repsol Renewables Dev. Co., LLC v. Trisura Ins. Co.*, No. CV 1:24-296 KRS/JMR, 2024 WL 3535387, at *3 (D.N.M. July 25, 2024) (analyzing a "broad" jury waiver that stated that plaintiffs waived their right to "any jury trial with respect to any litigation *arising under or in connection with this agreement*" and finding that it was "not explicitly limited to disputes between Plaintiff and Bridgelink") (emphasis added and citation omitted); *100 Mount Holly Bypass et al., v. AXOS BANK*, No. 2:20-cv-00856-TS-CMR, 2023 WL 6276593, at *3 (D. Utah Sept. 26, 2023) ("the scope of the waiver is broad" where it provides that "the Lessor and Lessee waive the right to trial by jury of any matters arising out of the lease or property or the conduct of the relationship between the lessor and lessee"); *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (determining that an arbitration clause stating that "all disputes arising under or in connection with this Agreement . . . will be settled exclusively by arbitration" constitutes "the very definition of a broad arbitration clause").

performed and payment due under the contracts," even if such claims arise under a statutory, rather than contractual, cause of action). Unlike in *PostNet*, which Palmer urges the Court to follow, the waiver provision here is not limited to claims brought by the Parties "against each other." *Cf. PostNet*, 2006 WL 1775599, at *1 (jury waiver did not extend to claims against non-signatories to a contract where the waiver stated that the parties to the contract "irrevocably waive trial by jury in any action . . . brought by either of them *against the other*") (emphasis added).

Moreover, the waiver's plain language suggests broad applicability to claims asserted by the Parties in connection with the Agreement. Specifically, the waiver states that it applies to "*any litigation action* or Dispute." ECF No. 76-1 § 31.4. The inclusion of "any litigation action" (which, by its plain terms, is even broader than the defined term "Dispute") in the waiver cannot be ignored.[14] *See Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990) (Contract "language must be examined and construed in

---

[14] Though the term "Dispute" is defined in the Agreement, that definition does indicate that the waiver is limited to any specific suit or claims. The Agreement simply states that "Dispute" "has the meaning set forth in Section 30.1." ECF No. 76-1 at 13. But § 30.1 ("Notice of Dispute") refers primarily to the procedures that the Parties agreed to use in the event of a Dispute, rather than defining the scope of the term:

> A Party asserting the existence of a dispute (the "Dispute") must deliver a written notice (a "Dispute Notice") to the other Party in accordance with Section 36.1, describing the nature and substance of the Dispute and proposing a resolution of the Dispute. The Party asserting a Dispute shall deliver a Dispute Notice within any applicable notice period for such Dispute to the extent specified in this Agreement. In the absence of such notice period, the Dispute Notice shall be given as soon as practicable, but in no event later than ninety (90) Business Days after the Party delivering the Dispute Notice has actual knowledge of the fact or event from which the Dispute arises.

> ECF No. 76-1 § 30.1.

harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions.").

*Second*, although the phrase "any litigation action" is undefined, other contract language helps shed light on the types of claims that Palmer understood might arise in connection with the Agreement—and thus be covered by the waiver's inclusion of this broad phrase. Specifically, language in the MasTec Guaranty, as one of the Agreement's Contract Documents, demonstrates that Palmer understood that it might assert claims related to the Agreement against MasTec. Indeed, Palmer and Evraz implicitly concede as much in the response, stating that "[t]he parties knew that a potential dispute in this $302 million construction project *had to involve the parents*." ECF No. 283 at 19 (emphasis added). Looking to other contractual language to understand the intended scope of this phrase is appropriate given that the Court has already concluded that the Guaranties are integrated into the Agreement.[15] *See Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 517 (Colo. App. 2006) (Contract documents should "be read together as a whole, not in isolation, to determine the parties' intent" where "several documents are part of a single transaction . . . even if the documents do not refer to one

---

[15] Indeed, the Agreement states that the Guaranties were entered in connection with the Parties' execution of the Agreement. *See* ECF No. 76-1 §§ 12.13, 14.1. This is reiterated in the Guaranties, which provide that they were entered "in consideration of and *as a condition [of] entering into the Agreement*." *Id.* at 781, 787 (emphasis added). Moreover, the Agreement and parent Guaranties were entered within a week of each other. *Compare* ECF No. 76-1 at 106 (Agreement dated May 15, 2021) *with* ECF No. 12-1 at 5 (Evraz Guaranty dated May 20, 2021) *and* ECF No. 76-2 at 5 (MasTec Guaranty executed May 18, 2021), further supporting the conclusion that they were executed as "part of a single transaction" and thus "should be read together as a whole." *Premier Farm Credit*, 155 P.3d at 517 (finding that a single transaction "consisted not only of the additional terms cited by defendants, but also of a note, a security agreement, and the remainder of the loan agreement") (citation omitted).

another.") (citing *In re Water Rights of Town of Estes Park,* 677 P.2d 320, 327 (Colo. 1984)).[16]

Reviewing the MasTec Guaranty (which MasTec and Palmer both signed), it is clear that Palmer understood that a "litigation action" against MasTec could arise in connection with the Agreement. Indeed, several provisions of the MasTec Guaranty clearly contemplate the initiation of litigation by Palmer against MasTec. *See, e.g.*, ECF No. 76-1 at 783 (providing that "[Palmer] may enforce against [MasTec] any and all of the rights of [Palmer] under this Guaranty without having instituted or completed any legal, arbitration or other proceedings against [Wanzek]"); *id.* at 784 (outlining the choice of law and venue provisions applicable in the event of an "action or proceeding relating to [the MasTec] Guaranty or its enforcement"). Additionally, MasTec's obligations under the Guaranty are necessarily related to Wanzek's performance under the Agreement. *See, e.g.*, *id.* at 781 (stating that MasTec "guarantees to [Palmer] . . . the due and punctual performance, of all of [Wanzek's] duties and obligations *under the Agreement*.") (emphasis added). Taken together with the waiver provision, it is clear that Palmer understood that enforcing the MasTec Guaranty might require Palmer to initiate a "litigation action" against MasTec related to the Agreement. In light of this as well as the

---

[16] Moreover, where, as here, "the initial document [(the Agreement)] requires execution of the second [(the parent Guaranties)] to accomplish the purpose of the first," "[t]he canon of construction requiring that documents be construed together when necessary to ascertain the agreement of the parties has particular force." *In re Estes Park,* 677 P.2d at 327; *see also E. Ridge of Fort Collins*, 109 P.3d at 975 (same); *see also* ECF No. 76-1 at 781 (providing that the MasTec agreed to the MasTec Guaranty "[i]n order to include [Palmer] . . . to enter into [the Agreement]"). That Evraz signed the Guaranty while Palmer signed the Agreement does not change the Court's conclusion. *See Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co.*, 109 P.3d 969, 975 (Colo. 2005) ("[S]eparate instruments that pertain to the same transaction should be read together even though they do not expressly refer to each other, and *even though they are not executed by the same parties.*") (citation omitted and emphasis added).

lack of any relevant limiting language in the waiver to exclude such actions, the Court is satisfied that the waiver's reference to "any litigation action" extends to claims brought by Palmer against MasTec in relation to the Agreement.

Accordingly, the Court finds that by assenting to the Agreement's broad waiver, Palmer waived its right to demand a jury trial as to its claim against MasTec in this action.

b.  *Enforceability of the Waiver as to Palmer's Claim Against MasTec*

Having found that the jury waiver covers Palmer's claim against MasTec, the Court now considers whether Palmer's assent to waiver in the Agreement is enforceable as to its claim against MasTec. For the reasons explained below, the Court finds that it is.

When determining enforceability, a court must consider "whether, in light of all the circumstances, . . . the waiver [is] unconscionable, contrary to public policy, or simply unfair." *Woodward*, 2019 WL 1438076, at \*2 (quotation marks omitted). Here, the relevant factors each weigh in favor of enforceability. *See, e.g.*, *Kulasa*, 2019 WL 13453921, at \*1 (enforceability factors considered by courts include "(1) the conspicuousness of the waiver; (2) the level of sophistication and experience of the contracting parties; (3) the negotiation of the contract's terms; (4) the relative bargaining power of the parties; and (5) whether counsel represented the waiving party." (citing omitted)). Indeed, Palmer does not argue that there is any issue as to the conspicuousness of the waiver, nor does it raise any issue as to the relative bargaining power of the Parties to the Agreement. Additionally, as noted above, Palmer was a sophisticated party that was represented by experienced counsel in its negotiation of the Agreement and the MasTec Guaranty. *See,*

23

*e.g.*, ECF No. 259 at 6–7, ECF No. 283 at 12.[17] Additionally, the Agreement and the MasTec Guaranty were executed as part of the same transaction within a week of each other, *see* ECF No. 76-1 at 106 (executed Agreement dated May 15, 2021); ECF No. 76-2 at 6 (executed MasTec Guaranty dated May 18, 2021)—a fact that the Tenth Circuit has found significant in assessing the enforceability of a jury waiver provision against a non-signatory. *See Hulsey*, 966 F.2d at 582 (explaining that the facts before the court varied from those in *Chase Commercial Corp. v. Owen,* where a jury waiver was enforced against a non-signatory "in one important respect: the document containing the jury waiver provision and petitioner's personal guaranty were not executed at the same time") (citing 248, 588 N.E.2d 705, 706-07 (Mass. 1992)).

Additionally, and most significantly, the Court finds that it would not be unfair or unconscionable to enforce the waiver as to Palmer's claim against MasTec. As discussed above, Palmer knowingly and intentionally assented in the Agreement to a broad jury waiver that covered, by its terms, "any litigation dispute." Likewise, it would not be unfair or unconscionable to uphold the waiver against MasTec—even though MasTec did not agree to and is not bound by the waiver—because MasTec has not made a jury demand. That alone is sufficient to find that MasTec has waived its right to a jury. *See Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) ("A party waives the right to a jury trial when he fails to make a timely demand under Rule 38(b).") (citing Fed. R. Civ. P. 38(d)). More

---

[17] In fact, MasTec contends, ECF No. 259 at 6, (and Palmer and Evraz do not appear to dispute) that both Palmer and Evraz were represented by the same law firm in entering both the Agreement and the Evraz Guaranty. *See* ECF No 76-1 at 826 (stating that the DocuSign Certificate of Completion was originated by an attorney at Baker McKenzie) *and* ECF No. 283 at 26.

importantly, however, MasTec has made abundantly clear that it is not seeking to invoke its Seventh Amendment right given that it has moved with Wanzek to strike all jury demands in this case. *See generally* ECF No. 259. Where, as a here, a party "want[s] a non-jury trial, this court cannot compel them to accept a jury trial, even though they had a constitutional or statutory right to proceed before a jury." *Lee v. Boyle-Midway Household Prods., Inc.*, 785 F. Supp. 533, 534 n.2 (W.D. Pa. 1992).

Accordingly, because Palmer knowingly and intelligently agreed to the Agreement's broad jury waiver and the MasTec Guaranty, and because MasTec seeks to avoid a jury trial altogether, it is neither unjust nor unfair to enforce the jury waiver in connection with Palmer's claim against MasTec.

### 3. *Wanzek's Claim Against Evraz*

The Court turns next to Wanzek's claim against Evraz to determine whether the jury waiver applies. To do so, the Court first analyzes the scope of Wanzek's waiver in connection with the Evraz Guaranty and before assessing the enforceability of the waiver as to Wanzek's claim against Evraz. As explained below, although Wanzek has agreed to waive its right to a jury trial in connection with any claims related to the Agreement, Evraz (unlike MasTec) has not. Because of this, enforcing the waiver against Evraz would be unfair and violative of Evraz's Seventh Amendment rights. Accordingly, the Court finds that the waiver is not enforceable as to Wanzek's claim against Evraz.

### a. *Scope of Wanzek's Agreed Upon Contractual Waiver*

With respect to the waiver's scope and whether Wanzek's agreement to it extends to its claim against Evraz under the Evraz Guaranty, the Court finds that it does for the

same reasons explained above. Specifically, because the waiver's broad language is not limited only to claims brought against one of the Parties and signatories to the Agreement, Wanzek's assent to the waiver extends to "any litigation action" related to the Agreement, including as to its claim against Evraz here.

Additionally, as with the MasTec Guaranty, it is clear that the Evraz Guaranty was entered in connection with and as part of the same transaction as the Agreement, and that Wanzek anticipated the possibility of litigation arising in connection with both agreements. *See, e.g.*, ECF No. 76-1 at 787 (providing that Evraz "guarantees to [Wanzek] . . . the due and punctual payment, and the due and punctual performance, of all of [Palmer's] duties and obligations *under the Agreement* and all modifications and extensions of that Agreement") (emphasis added); *id.* at 790 (outlining a venue and choice of law provision). The language in the Evraz Guaranty thus makes clear that, should Palmer fail to perform, Wanzek could enforce its rights by initiating a litigation action against Evraz.

Accordingly, the scope of the jury waiver provision extends to and covers Wanzek's claim asserted against Evraz in connection with the Agreement.

b.  *Enforceability of the Waiver as to Wanzek's Claim Against Evraz*

Although the Court concluded above that the broad language of the jury waiver means that Wanzek waived its right to a jury trial for its claim against Evraz arising under the Evraz Guaranty, Evraz has its own rights that it can and has asserted. In this posture, the Court must now consider whether it can enforce the jury waiver against Evraz in connection with Wanzek's claim against it, even though Evraz has not agreed to the

26

waiver and has instead made a jury demand. For the reasons explained below, the Court concludes it cannot.

Unlike MasTec, which failed to make a jury demand and has instead affirmatively sought to benefit from the jury waiver provision, Evraz has done the opposite. *See* ECF No. 61 at 11. Moreover, as discussed above, the waiver is not binding on Evraz, which did not assent to its terms. Rather, the only agreement that Evraz knowingly and voluntarily entered was the Evraz Guaranty, which does not contain a jury waiver provision. In fact, the Evraz Guaranty explicitly provides that the only terms to which Evraz assented are those actually articulated in the Evraz Guaranty. *See* ECF No. 76-1 at 790 ("[The Evraz Guaranty] contains the entire agreement of the parties relating to the subject matter."). Indeed, there is no indication from the plain text of the Evraz Guaranty that Evraz "knowingly and intentionally waived" its right to a jury trial. *Telum*, 859 F.2d at 837 (citing *Leasing Serv. Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir.1986)).

Wanzek's argument that the Court should strike Evraz's jury demand because Evraz "will derive benefit" from the Agreement does not persuade. ECF No 259 at 15–16 (citing ECF No. 12-1 at 1). Though Wanzek is correct that, in other circumstances, "[c]ourts have enforced a jury trial waiver against non-signatory parties who seek to benefit from provisions in a contract and, at the same time, avoid jury waiver provisions," *id.* at 16, this is simply an estoppel argument made without invoking the doctrine, as Palmer and Evraz correctly note, *see* ECF No. 283 at 18. And while estoppel can be a way by which a non-signatory is bound to a contract, *see, e.g.*, *Woodward*, 2019 WL

27

1438076, at *5 (collecting cases), Wanzek fails to establish that equitable estoppel is appropriate here.

In Colorado, "equitable estoppel is generally understood as arising 'where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence.'" *Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. 2019) (citing *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010)). "However, Colorado law has never favored estoppel." *Id.* (citation omitted). As a result, "[t]he doctrine of estoppel. . . will be applied only when all of the elements constituting an estoppel are clearly shown." *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991). Accordingly, "estoppel may not be applied as a bar absent a clear showing of each of the . . . four elements," *Santich*, 443 P.3d at 65, which require Wanzek to establish that (1) Evraz "know[s] the relevant facts;" (2) Evraz "intend[ed] that its conduct be acted upon or [led] [Wanzek] to believe that [Evraz's] conduct is so intended;" (3) Wanzek "must be ignorant of the true facts;" and (4) Wanzek "detrimentally rel[ied] on [Evraz's] conduct." *Id.* (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992)).

Rather than address these factors, Wanzek simply argues that because "the Contract and the [Evraz] Guaranty are interrelated," they "should be read together so as to enforce the jury waiver against all parties." ECF No. 259 at 14. Not so. In a similar context, the Supreme Court of Colorado has made clear that "a nonsignatory . . . can only assert equitable estoppel against a signatory . . . if the nonsignatory can demonstrate *each of the elements of equitable estoppel*, including detrimental reliance." *Santich*, 443 P.3d at 64 (discussing estoppel in the context of an arbitration clause) (emphasis added).

28

This is true even where, as here, "the claims asserted against all defendants are interdependent and intertwined with duties and obligations in the [primary Agreement]." *Id.*[18] Although *Santich* arose in relation to a contractual arbitration provision, the Court has no reason to think that Colorado law departs from this principle when considering the enforcement of a contractual jury waiver provision against a non-signatory.[19]

Additionally, that Palmer, as Evraz's subsidiary, agreed to the Agreement's jury waiver provision, does not mean that waiver should be enforced against Evraz.[20] *See, e.g., PostNet*, 2006 WL 1775599, at *3 (explaining that even though a "Franchise Agreement contains a jury waiver by the Store Owner," the waiver did not extend to the Store Owner's guarantors under in connection with the Franchise Agreement because "[n]owhere in either the Guarantee or in the Franchise Agreement is there a waiver of the jury right *by the [guarantors]*") (emphasis added). And to the extent there is any uncertainty, the Court is obligated to indulge every presumption *against* waiver of this

---

[18] In fact, the *Santich* opinion specifically disavows a lower court's decision that had endorsed a "special estoppel rule predicated upon the interconnectivity of claims and actions taken in concert by signatories and nonsignatories to an arbitration agreement" because it determined that interconnectivity alone did not satisfy the estoppel requirements. *Id.* at 66 (citing *Meister v. Stout*, 353 P.3d 916 (Colo. App. 2015)).

[19] Notably, the Supreme Court of Colorado even acknowledged that its ruling in *Santich* "may result in piecemeal litigation in which related claims simultaneously proceed" in different venues. *Id.* at 62 n.2. Nevertheless, the court stated that "'policy reasons' alone cannot replace . . . necessary predicate[s] for the application of equitable estoppel." *Id.* (citation omitted).

[20] Wanzek's attempt to argue otherwise is unavailing. In particular, its reliance on the rationale in *Branta* is misplaced here. In that case, the contractual waiver was found to extend to the contractual signatory subsidiary's parent because the jury waiver provision explicitly "ran to every party in the contract, including the [signatory's] parent companies as affiliates." ECF No. 259 at 11–13 (citing *Branta*, 2017 WL 1435882, at *3). But in *Branta*, it was the explicit inclusion of the signing parties' "affiliates," and not the "closely related" nature of the subsidiary and its parent company, that led the court to find that the jury waiver i was binding on the parents. That the jury waiver here contains no such reference to a Party's "affiliates" (despite the term being otherwise defined in the Agreement) is fatal to Wanzek's argument.

important constitutional right. *See, e.g.*, *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002) ("There is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed.").

In sum, Wanzek's claim against Evraz will be heard by a jury precisely because Evraz has preserved that right by making a jury demand, irrespective of Wanzek's waiver. But with respect to Palmer's claim against MasTec, Palmer *has* waived that right and, by bringing this motion to strike (in addition to not making a jury demand), MasTec has, as well. Accordingly, the motion to strike is GRANTED in part as to Palmer's claims against Wanzek and MasTec and Wanzek's counterclaims against Palmer, and DENIED in part as to Wanzek's claim against Evraz.

### C. Whether to Bifurcate the Trial or Proceed in a Single Trial With an Advisory Jury Pursuant to Rule 39(c)

Having determined that all but one of the claims in this case are subject to the Agreement's jury waiver provision, the Court turns to the parties' competing suggestions on how to structure a trial in this case.

For their part, Wanzek and MasTec request that the Court bifurcate and sequence the trial such that a bench trial on the claims subject to the waiver proceed first before the remaining claim is heard by a jury in a second trial. ECF No. 259 at 16–18. Palmer and Evraz resist this proposal and instead suggest that all claims should proceed in a single trial, with a jury sitting in an advisory jury capacity as to the claims subject to the waiver. ECF No. 283 at 23–25. Because the Court finds that it would not be conducive to expedition and economy, Wanzek and MasTec's request to bifurcate the trial is DENIED. However, because binding Tenth Circuit precedent appears to prevent the Court from

proceeding with an advisory jury in this action, the Court ORDERS the parties to submit additional briefing on this issue, as outlined below.

With respect to bifurcation, a court may order a separate trial of any claim or separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). Courts in the Tenth Circuit consider the separability of the issues, judicial efficiency, and fairness when deciding whether bifurcation is appropriate. *See Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964–65 (10th Cir. 1993). Whether or not to bifurcate is a matter of the trial court's discretion. *See Excel-Jet, Ltd., v. United States*, No. 07-cv-02181-WYD, 2008 WL 5101182, at *1 (D. Colo. Nov. 26, 2008) ("A court has discretion to bifurcate if the court finds that bifurcation will: 1) avoid prejudice; 2) be more convenient; or 3) be conducive to expedition and economy.") (citing *King v. McKillop,* 112 F.Supp.2d 1214, 1221 (D.Colo. 2000)). Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable. *See O'Dell v. Hercules Inc.,* 904 F.2d 1194, 1202 (8th Cir.1990). Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Id.* at 964 (citation omitted).

Considering the factors above, the Court finds that bifurcation would be neither convenient nor conducive to an economical resolution of this matter. Rather, as Palmer and Evraz note, bifurcation would be highly inefficient and force the Court and the parties to "present multiple times to two different triers of fact many of the same facts, issues and witnesses in contiguous proceedings," resulting "in a tremendous waste of the Court's and the parties' resources." ECF No. 283 at 20–21. Indeed, assessing Wanzek's claim

against Evraz under the Evraz Guaranty (which will be decided by a jury) will require an understanding whether Palmer breached its obligations under the Agreement (which will be determined by the Court). Unnecessary repetition of such evidence is neither convenient nor expeditious for the parties, and in fact, would prejudice the parties in such a manner as to make bifurcation inappropriate. *See Smith v. BNSF Ry. Co.*, No. 17-cv-00977-KMT, 2019 WL 5063468, at *2 (D. Colo. Oct. 8, 2019) ("[P]rejudice includes improper bifurcation where the issues are so closely interwoven that the plaintiff would have to present the same evidence twice, or thrice, in separate trials.") (citation omitted). Accordingly, because "judicial expedition and economy" do not "'favor separation of issues' and the issues are [not] clearly separable,'" bifurcation is not warranted. *Cf. Excel-Jet*, 2008 WL 5101182, at *1 (citing *Angelo,* 11 F.3d at 964).

Nevertheless, as previewed above, the Court is not convinced that it is appropriate to proceed with an advisory jury in this action. Federal Rule of Civil Procedure 39(c) provides that "[i]n an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury." However, in interpreting this statute, the Tenth Circuit has stated that "the use of an advisory jury by the district court is limited to cases which are not triable to a jury as of right, and that if the parties waived their right to jury trial in a case thus triable, the court lacks authority to use an advisory jury." *McKinney v. Gannett Co.*, 817 F.2d 659, 673 (10th Cir. 1987) (citing *Hargrove v. American Cent. Ins. Co.,* 125 F.2d 225 (10th Cir. 1942)). That is precisely the situation the Court now finds

itself in. Although other circuits may interpret Rule 39 differently,[21] the Court is bound to follow the law as articulated in this Circuit.

Because neither party has proposed a third solution or addressed this issue, the Court hereby orders the parties to submit supplemental briefing outlining their proposed solution on how a trial in this action should proceed based on the Court's foregoing order. To the extent a party believes that the Court has discretion to proceed with an advisory jury in the matter, it should provide support in its supplemental briefing, in addition to proposing any other solutions. All supplemental briefing should be submitted to the Court no later than three weeks from the date of this Order.

## IV.    CONCLUSION

Consistent with the foregoing, Wanzek and MasTec's Motion to Strike Palmer and Evraz's Demands for Jury Trial or in the Alternative, Bifurcate the Trial, ECF No. 259, is GRANTED in part and DENIED in part. Wanzek's claim against Evraz will be decided via a jury trial and all other remaining claims will be tried via a bench trial, consistent with the Agreement's jury waiver provision. Additionally, the parties are ORDERED to submit supplemental briefing on their proposed structure for any trial no later than three weeks from the date of this Order.

---

[21] *See, e.g.*, *Idaho Potato Comm'n v. M & M Produce Farms & Sales*, No. 7:97-CV-8125, 2009 WL 10739845, at *1 (S.D.N.Y. Dec. 4, 2009) ("[T]he Second Circuit has held that this Rule does not prevent empaneling an advisory jury when the parties have waived their right to a jury trial.") (citing *(Am.) Lumbermens Mut. Cas. Co. of Ill. v. Timms & Howard*, 108 F.2d 497, 500 n.2 (2d Cir. 1939)).

34

DATED this 10th day of July 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge