IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-03290-CNS-MDB

PALMER NORTH AMERICA LLC,

     Plaintiff,

v.

WANZEK CONSTRUCTION INC., and
MASTEC, INC.,

     Defendants.
_____

WANZEK CONSTRUCTION INC.,

     Counterclaim-Plaintiff,

v.

PALMER NORTH AMERICA LLC, et al.,

     Counterclaim-Defendant.

_____

WANZEK CONSTRUCTION, INC.,

     Third-Party Plaintiff,

v.

EVRAZ NORTH AMERICA PLC,

     Third-Party Defendant.

---

**ORDER**

---

Before the Court is Wanzek Construction Inc.'s Motion for Summary Judgment on its Third Counterclaim for Relief Against Plaintiff Palmer North America LLC. ECF No. 261. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Wanzek's motion. In doing so, the Court presumes the reader's familiarity with this case's factual and procedural background and the parties' summary judgment briefing. *See, e.g.,* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Additionally, because the Court has now resolved Defendants' "phase one" summary judgment motions, the Unopposed Motion for Status or Scheduling Conference, ECF No. 370, is DENIED as moot.

## I.    BACKGROUND

The following background is taken from the relevant undisputed facts and evidentiary materials properly before the Court.

On May 14, 2021, Palmer North America LLC (Palmer) and Wanzek Construction, Inc. (Wanzek) entered into a construction contract as part of Palmer's expansion of a rail production facility at a steel mill located in Pueblo, Colorado (the Project). *See* ECF No. 76-1 (the Agreement) at 2;[1] ECF No. 261 at 6 ¶ 3; ECF No. 284 at 6 ¶ 3. After the Agreement was executed, the parties commenced work on the Project, though it appears that it did not take long for the relationship to sour. While the parties dispute the details of various Project-related issues, as well as who is ultimately to blame, both seem to acknowledge that these issues came to a head near the end of the year in 2022—around the same time Palmer and Wanzek agreed to temporarily shut the Project down due to

---

[1] Pincites to page numbers in a docket entry refer to the ECF header and not internal pagination.

inclement weather and upcoming winter holidays. *See* ECF No. 261 at 9–10 ¶ 16; ECF No. 284 at 7 ¶ 16.

On December 21, 2022 (the same day the holiday shutdown began), Palmer sent Wanzek a letter stating that Wanzek was "in default of its contractual obligations and other legal duties" under the Agreement and had ten days from receipt of the notice "to cure these events of default." ECF No. 1-3 (the Default Notice) at 2–3; ECF No. 261 ¶ 18; ECF No. 284 at 7 ¶ 18. The same day, Palmer initiated the instant litigation against Wanzek.[2] ECF No. 1; ECF No. 261 at 10 ¶ 20; ECF No. 284 at 7 ¶ 20. In the complaint, Palmer alleged that following Wanzek's receipt of the Default Notice, Wanzek "failed and refused to cure its breaches of the [Agreement]." *Id.* ¶ 24.

On December 26, 2022, Wanzek sent Palmer a letter responding to the Default Notice. ECF No. 78 at 46–51 (the Default Response); ECF No. 261 at 10 ¶ 23; ECF No. 284 at 8 ¶ 23. In response, on December 29, 2022, Palmer sent Wanzek another letter, ECF No. 78 at 53–58; ECF No. 261 at 13 ¶ 34; ECF No. 284 at 14 ¶ 21,[3] in which Palmer stated that "if [Wanzek] does not cure all of its breaches to [Palmer's] satisfaction by December 31, 2022 in accordance with Article 29.2 of the Contract, [Palmer] will declare [Wanzek] in default and proceed with termination," ECF No. 78 at 57.

Ultimately, Palmer did just that. On December 31, 2022, Palmer sent Wanzek a notice terminating the Agreement because, according to Palmer, Wanzek had "failed to cure the instances of [it's] default specifically identified in [the] December 21, 2022 Notice

---

[2] Palmer also sued Wanzek's parent company and guarantor to the Agreement, MasTec, Inc. *See id.*

[3] Although the parties dispute the other's characterization of the *contents* of Palmer's December 29 letter, there appears to be no dispute as to the identity of the letter or whether it was sent. *Compare* ECF No. 261 ¶ 34 (citing ECF No. 78 at 53–58) *and* ECF No. 284 at 10 ¶ 35 (citing ECF No. 330 (Ex. FFF)).

of Default." ECF No. 78 at 60–61 (the Termination Notice); ECF No. 261 at 13 ¶ 35; ECF No. 284 at 10 ¶ 35.

This litigation has continued and expanded in scope since then. In addition to Palmer's claims, Wanzek alleges counterclaims against Palmer, including, as relevant to this motion, its third counterclaim in which Wanzek contends that Palmer breached its contractual obligations by failing to comply with the agreed-upon notice and cure procedures to terminate the Agreement for cause. *See* ECF No. 103 at 14–15 ¶ 1 (incorporating by reference Wanzek's counterclaims against Palmer alleged in its first Amended Counterclaims, ECF No. 78); ECF No. 78 at 36–38 ¶¶ 144–156. The merits of Wanzek's third counterclaim are discussed below.

## II.    LEGAL STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (citation omitted); Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby Inc.*, 477 U.S. at 256 (citation omitted). Ultimately, summary judgment turns on whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

4

## III.    ANALYSIS

In its motion, Wanzek seeks summary judgment on its third counterclaim against Palmer for breach of contract arising from Palmer's wrongful termination of the Agreement. ECF No. 261. The Court considers Wanzek's arguments below. In connection with its assessment, the Court first identifies the notice and cure obligations to which Palmer agreed in the Agreement. Next, the Court describes how Colorado law treats contractual notice and cure provisions. Finally, the Court considers whether Palmer breached its contractual obligations prior to termination.

As explained below, because there is no factual dispute that Palmer, by its own admission, failed to notify Wanzek in the Default Notice that it was considering termination, Palmer breached its obligations under the Agreement.

### A.  Whether Palmer Breached the Agreement's Notice and Cure Provision

1. *The Agreement's Notice and Cure Provision*

Before determining whether a breach occurred, the Court reviews the notice and cure provision at issue to see what it requires based on the parties' mutual intent. *See, e.g.*, *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (contract interpretation in Colorado requires ascertaining "the parties' mutual intent" while ensuring that the contract is construed "consistently with the well-established principles of interpretation") (citation omitted).[4] As an initial matter, the undisputed facts establish that Palmer and Wanzek entered into a contract (the Agreement, ECF No. 76-1, as

---

[4] The parties apply substantive Colorado law in connection with their briefing, ECF Nos. 261, 284, 339, and the Agreement contains a choice of law provision stating that it "shall in all respects be governed by and construed in accordance with the laws of the State of Colorado. ECF No. 76-1 § 36.8. The Court thus applies substantive Colorado law in connection with its analysis.

discussed above), *see* ECF No. 261 at 6 ¶ 3; ECF No. 284 at 6 ¶ 3, and neither argues that the Agreement is unenforceable.

With that, the Court turns to the relevant text of the contractual provision at the center of Wanzek's motion: Section 29.2. The parties do not dispute that this provision, which appears under the header "Owner [(Palmer)] May Terminate for Cause,"[5] ECF No. 76-1 at 95, includes a termination clause and sets forth the conditions under which Palmer could terminate the Agreement for cause, *see* ECF No. 261 at 7–8 ¶¶ 8, 9, 11; ECF No. 284 at 7 ¶¶ 8, 9, 11. Section 29.2(a) then begins by describing a series of "events," any one of which would "constitute a default by [Wanzek] and justify [Palmer's] termination for cause." ECF No. 76-1 at 95.

The following sub-section, Section 29.2(b), contains a notice and cure provision describing the steps Palmer agreed to follow before it could terminate the Agreement for cause. *Id.* at 96. In relevant part, Section 29.2(b) provides that

> [i]f one or more of the events identified in Section 29.2(a) occurs, then after giving [Wanzek] ten (10) days' . . . written notice that [Palmer] is considering a declaration that [Wanzek] is in default and termination of this Agreement, [Palmer] may proceed to . . . declare [Wanzek] to be in default, and give [Wanzek] written notice that this Agreement is terminated[.]

> *Id.*

Section 29.2(d) then states that "[Palmer] may not proceed with termination of this Agreement under Section 29.2(b) if [Wanzek] within ten (10) days of receipt of notice of intent to terminate corrects (if curable in that time) or (if not curable in that time) begins to correct its failure to perform and proceeds diligently to cure such failure." *Id.*

---

[5] The Agreement defines "Owner" as Palmer and "Contractor" as Wanzek. ECF No. 76-1 at 12.

Although Wanzek's motion centers around Section 29.2(b), neither party presents extensive argument on what the text of this provision specifically demands. However, based on the arguments that Wanzek's advances (*see* ECF No. 261 at 18, as discussed further below), the Court understands that Wanzek interprets Section 29.2(b) to mean that a notice sent by Palmer pursuant to Section 29.2(b) must state both that Palmer (1) considers Wanzek to be in default of its contractual obligations, and (2) is considering terminating the Agreement. *See id.* In response, Palmer does not dispute this interpretation or argue that it was not required to provide such notice; rather, Palmer argues that its Default Notice met both requirements. *See* ECF No. 284 at 15–16.

The interpretation accepted by both parties is consistent with the "plain and generally accepted meaning of the words used" in Section 29.2(b), *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (citing *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 974 (Colo. 2005)), which clearly provides that Palmer's "written notice" must state that it was "considering a declaration that [Wanzek] is in default *and* termination of this Agreement," ECF No. 76-1 at 96 (emphasis added). This interpretation is also consistent with the related language in Section 29.2(d), which states that Palmer may terminate the Agreement for cause ten days after Wanzek receives Palmer's "notice of intent to terminate." *Id.*

Thus, the Court concludes that Section 29.2(b)'s notice requirement obligated Palmer to provide Wanzek with notice of its intention to terminate the Agreement, in addition to notifying Wanzek that Palmer was considering a determination that Wanzek was in default.

2.  *Colorado Law on Contractual Notice and Cure Provisions*

In addition to the Agreement's contractual language, an overview of how Colorado law treats contractual notice and cure provisions is warranted.

For over seventy years, Colorado courts have held that where parties enter into a contract that requires notice and the opportunity to cure prior to termination, such provisions must be followed, lest the terminating party be found in breach of its contractual obligations. *See Carleno Coal Sales v. Ramsay Coal Co.*, 270 P.2d 755, 757 (Colo. 1954) (en banc) (a contract that requires "a sixty-day notice [period]" of an alleged default, and which permits the defaulting party "sixty days within which to cure the default," cannot be terminated by the non-defaulting party "for alleged failure of performance without giving the sixty-day notice of [its] intention to end the agreement"); *see also, e.g.*, *Century Enters., Inc. v. Blair*, 429 P.2d 291, 292(Colo. 1967) ("Until a valid 60-day notice requiring Century 'to remedy the default' within that period of time was served upon it, Blair had no right to proceed in demanding any forfeiture" because the cure "period within which to make any overdue payment was expressly contained in the [parties'] original contract[.]"). Compliance with such requirements extends not only to the provision of a cure period, but also to the contents of a default notice. *See, e.g.*, *id.* at 292–93 ("Since all rights of Blair to cancel the agreement were conditioned upon the giving of proper notice of default[,] it was error for the trial court to grant relief to him without compliance with the terms of the contract relating to the giving of notice."); *Denver Ventures, Inc. v. Arlington Lane Corp.*, 754 P.2d 785, 788 (Colo. App. 1988) (affirming trial court's determination that defendant was precluded from recovering on its counterclaims "[b]ecause defendant failed to give plaintiff notice before exercising its right to terminate the contract").

This is unsurprising given that Colorado "recognize[s] a strong policy of freedom of contract." *Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) (en banc) (citing *Constable v. Northglenn, LLC*, 248 P.3d 714, 718 (Colo. 2011)). And since "[s]trong policy considerations favoring freedom of contract generally permit business owners to allocate risk amongst themselves as they see fit," *id.* (citing *Northglenn*, 248 P.3d at 714), "[c]ontracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves," *id.* (citing *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 75 (Colo. 1991)). Accordingly, courts "must construe contracts in a way that best effectuates the intent of the parties and allows each party to receive the benefit of the bargain" when applying Colorado law. *Id.* (citing *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997)).

Nevertheless, non-compliance with a contractual notice and cure provision may be excused in certain circumstances. As Palmer notes, and as this Court previously recognized, "[i]n Colorado, notice of default and right to cure is not required if it would be futile." *City of Fort Collins v. Open Int'l, LLC*, No. 21-cv-02063-CNS-MEH, 2023 WL 3585214, at *7 (D. Colo. May 22, 2023) (citing *Hoppe v. Percheron Assocs.*, LLC, No. 11-cv-03233, 2012 WL 3135378, at *6 (D. Colo. Aug. 1, 2012)); *see also New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1180 (Colo. App. 2008) ("[T]he law does not require a party to perform futile acts as a condition precedent to asserting its rights.") (citation omitted). "Futility requires a showing either that (i) the defaulting party has clearly communicated its intent not to perform its contract obligations, or (ii) the defaulting party would be clearly unable to timely perform its contract obligations even if the requisite

9

notice of default is given." *Id.* (citing *Hoppe*, 2012 WL 3135378, at *6; *Highlands Ranch Univ. Park v. Uno of Highlands Ranch*, 129 P.3d 1020, 1024 (Colo. App. 2005)).

> 3. *Palmer's Compliance with the Agreement's Notice Requirement*

Having outlined Palmer's contractual obligations and the relevant law, the Court turns to Wanzek's arguments.

In the motion, Wanzek argues that Palmer breached Section 29.2(b)'s notice requirement because the Default Notice "did not actually notify Wanzek that Palmer was considering termination of the [Agreement]." ECF No. 261 at 18 (citing Statement of Fact (SOF) ¶ 34). In response, Palmer does not argue that Section 29.2(b) did not require such notice. Nor does Palmer argue that its compliance with Section 29.2(b)'s notice requirement should be excused on the basis of futility.[6] Instead, Palmer's sole rebuttal is that its Default Notice complied with Section 29.2(b) and was sufficient to notify Wanzek that it was considering termination. *See* ECF No. 284 at 15–16.

As support, Palmer points to language in the Default Notice, including that it was titled a "Notice of Default" and specifically invoked Section 29.2 of the Agreement. *See id.* at 15; ECF No. 1-3 (Default Notice) at 2 ("This letter provides notice that [Wanzek] is in default of its contractual obligations and other legal duties. (Articles 29.2, 36.5.)").

---

[6] Palmer's response includes an extensive futility argument to support the contention that strict adherence to the Agreement's notice and cure provision was not required. *See* ECF No. 284 at 18–23. Specifically, Palmer argues that it was not required to provide Wanzek the full day 10-day cure period outlined in Sections 29.2(b) and (d) because it would be futile to do so since Wanzek would not have been able to cure (and did not begin curing) the alleged defaults in that time. *Id.* at 19–22. Palmer then marshals various record evidence to show that Wanzek would not have been able to cure. *See, e.g., id.* at 20 (arguing that Wanzek "confirmed it would not be able to meet the existing project schedule and would not provide a Recovery Schedule that would allow it to meet the schedule"); *id.* at 21 (arguing that Wanzek's letters in response to the Default Notice "demonstrated the futility of further engagement on the safety and quality issues raised in the notice of default"). Review of this argument and the attendant evidence satisfies the Court that Palmer's futility argument addresses only to its alleged non-compliance with Section 29.2's *cure* provision and not its compliance (or non-compliance) with the *notice* requirements.

Palmer argues that by referencing Section 29.2, the Default Notice alerted Wanzek that Palmer was considering termination. *Id.* Palmer also argues that its compliance with the notice requirement is further demonstrated by the Default Notice's explicit reference to Section 29.2(b) of the Agreement, as well as the statement that Palmer reserved its "rights to terminate" the Agreement. *Id.* at 16; ECF No. 1-3 at 3 ("Please be advised that [Wanzek] has ten (10) days from the date of this notice to cure these events of default as provided by Article 29.2(b) of the Contract. [Palmer] expressly reserves any and all of its rights, . . . including rights to terminate the Contract, . . . "). Notably, Palmer does not contend that the Default Notice expressly stated its intent to terminate. Rather, it argues that these references in the Default Notice were sufficiently "clear" as to notify Wanzek that it was considering termination. *Id.* at 15–16.

Considering the language in the Agreement and in Palmer's Default Notice, it would be conceivable, perhaps even reasonable, to infer that the Default Notice was sufficient to alert Wanzek that Palmer was considering for cause termination, as it was required to do. And because the Court must "draw all factual inferences in favor of the nonmovant" at summary judgment, *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (citation omitted), without undisputed evidence to the contrary, the Court would be required to reject Wanzek's argument. *See, e.g.*, *Jewel Sanitary Napkins, LLC v. Busy Beaver Publications, LLC*, 178 F.4th 375, 380 (7th Cir. 2026) ("An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment.") (citation omitted).

But Wanzek *did* provide undisputed evidence, from Palmer's own words, that directly contradicts the inference Palmer now asks the Court to draw. Specifically, attendant to this argument, Wanzek cites its statement of fact (SOF) 34, which provides that "[o]n Thursday, December 29, 2022, for the first time, Palmer notified Wanzek of an intent to terminate the Contract." ECF No. 261 at 13 ¶ 34 (citing ECF No. 78 at 57–58; ECF No. 261-3 (Ex. B, Palmer's Response to Wanzek's Request for Admission No. 32) at 4. In response, Palmer denied SOF 34 by citing to the Default Notice and making the same arguments referenced above. *See* ECF No. 284 at 9 ¶ 34 (denying SOF 34 and stating the Default Notice "expressly referenced [Palmer's] 'rights to terminate the [Agreement]' and invoked Article 29.2(a), which lists events justifying termination for cause, and Article 29.2(b), which requires ten days' notice of default to be provided prior to termination") (citing ECF No. 76-3 at 2–3). [7]

But the Default Notice itself is not the only evidence offered to support SOF 34. *See* ECF No. 261 at 13 ¶ 34. In addition, Wanzek also cites to its Request for Admission No. 32, along with Palmer's response to it, which states:

**REQUEST FOR ADMISSION NO. 32:**

Admit that in the NOTICE OF DEFAULT, PALMER did not notify WANZEK it is considering termination of the CONTRACT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Plaintiff incorporates its general objections as though stated in full herein. Plaintiff specifically objects to this request as vague, ambiguous and irrelevant. Subject to

---

[7] In their briefing, the parties include more than one citation to the Default Notice, which has been docketed multiple times. *See* ECF Nos. 1-3 and 76-3. As these entries refer to the same document, the Court cites to them interchangeably as needed.

and without waiving the foregoing objections, Plaintiff responds as follows: Admitted.

ECF No. 261-3 at 4.

Palmer's sworn admission—"[a]dmitted"—makes clear in no uncertain terms that it understood that the Default Notice "*did not* notify [Wanzek that Palmer] is considering termination of the [Agreement]." *Id.* (emphasis added).[8] This admission was verified by Palmer's Contracts/Procurement Manager, Greg Vialpando, who had "personal knowledge of the matters" addressed in Palmer's discovery responses and who declared under penalty of perjury that Palmer's responses to Wanzek's requests for admission were true and correct. *See* ECF No. 261-3 at 4, 7.

Party admissions like this one are evidentiary material that "by [their] nature [have] considerable probative value," *H. B. Zachry Co. v. O'Brien*, 378 F.2d 423, 425 (10th Cir. 1967), and are appropriately considered at summary judgment, *see Jeffrey v. CP Kelco U.S., Inc.*, 544 F. App'x 817, 820 (10th Cir. 2013) (citing Fed. R. Civ. P. 56(c)(1)). And since this admission shows Palmer's own understanding of the words it used in the Default Notice, in order for there to be a genuine dispute of material fact, Palmer must offer "contrary evidence" or some "other sufficient reason" for the Court to "disbelieve" Palmer's sworn, prior admission. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) ("A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it[.]").

---

[8] Greg Vialpando, Palmer's Contracts/Procurement Manager declared under penalty of perjury that Palmer's responses to Wanzek's requests for admission were true and correct. ECF No. 261-3 at 7.

Palmer's evidence does not reach this bar. The only evidence Palmer offers to support its denial of SOF 34 is the language in the Default Notice and its new interpretation of the same. *See* ECF No. 284 at 9 ¶ 34. This alone is not enough. "[T]he mere existence of an alternative interpretation" of the Default Notice "does not itself create a genuine factual dispute sufficient to defeat summary judgment." *Piazza v. HK Hosp., LLC*, No. CIV 24-0051 JB/SCY, 2026 WL 1493348, at *20 (D.N.M. May 28, 2026). And this is particularly so here since Palmer's proffered interpretation is "so 'blatantly contradicted" by its own prior sworn admission "that no reasonable [factfinder] could believe it.'" *Manning v. City of Tulsa*, 170 F.4th 1287, 1295 (10th Cir. 2026) (At summary judgment, the Court "must accept the nonmoving party's version of a material fact unless it is so 'blatantly contradicted by the record . . . that no reasonable jury could believe it.'") (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Jewel Sanitary Napkins*, 178 F.4th at 380 ("An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage.") (citation omitted).

Given that Palmer's argument is "utterly discredited" by its own prior admission, the Court need not rely on it. *Scott*, 550 U.S. 372, 380–81. Moreover, Palmer offers no other evidence for the Court to consider such that it would be reasonable to disbelieve Palmer's prior admission (which Mr. Vialpando swore was correct). *Cf. e.g.*, *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998) ("[W]here deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ") (citation omitted). For these reasons, this newly offered interpretation of the Default Notice cannot absolve Palmer of its prior sworn statement to the contrary, in which it admitted that the Default Notice did not comply with

14

Section 29.2(b)'s notice requirements. ECF No. 261-3 at 4. Accordingly, "[Palmer] is bound by its previous admission and cannot contradict it here, under the rule that a party cannot contradict answers given during discovery to defeat a motion for summary judgment." *Consol. Edison Co. of New York v. Lexington Ins. Co.*, No. 14 CIV. 6547 CM JLC, 2015 WL 4611206, at *8 (S.D.N.Y. July 30, 2015) (citing *Perma Research & Dev. Co. v. Singer,* 410 F.2d 572, 578 (2d Cir. 1969)); *see also, e.g.*, *Phillips v. Avis, Inc.*, No. 95 C 1566, 1996 WL 288782, at *2 (N.D. Ill. May 29, 1996) (a non-moving party "cannot attempt to avoid summary judgment by contradicting its [own] express factual assertions") (citing *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.,* 976 F.2d 58, 61 (1st Cir. 1992)); *Williams v. V&J Emp. Serv., Inc.*, No. 15-C-346, 2016 WL 1090556, at *3 (E.D. Wis. Mar. 17, 2016) ("[A] party cannot defeat summary judgment" by offering "conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.") (citing *Adusumilli v. City of Chi.*, 164 F.3d 353, 360 (7th Cir. 1998)).

At bottom, Wanzek bargained to "specifically restrict[]" Palmer's "right to cancel the contract for cause." *Carleno Coal Sales*, 270 P.2d at 758 (failure to comply with bargained-for notice and cure provisions is a "violation of [a] contract"). By omitting the fact that it was considering termination—and by admitting as much—Palmer's Default Notice was "patently defective" and "obviously . . . not 'in accordance with the terms' of the contract entered into by the parties." *Blair*, 429 P.2d at 292.

Accordingly, the Court finds that in sending the Default Notice and then proceeding with for-cause termination, Palmer breached its notice obligations under Section 29.2(b) of the Agreement.[9]

---

[9] This conclusion might be different had Palmer offered any argument on this issue or attempted to explain the contradiction between its prior admission and its position now—for instance, a statement from Mr.

15

**B. Whether Palmer Has Established the Remaining Elements of Its Wrongful Termination Breach of Contract Counterclaim**

While the Court is satisfied that Palmer breached the Agreement's notice provision, in order for Wanzek "[t]o succeed on its motion for summary judgment, [it] has the burden to establish *every element* of its breach of contract claim with competent evidence." *IHS Markit, Ltd. v. Colliers Int'l WA, LLC*, No. 19-cv-00876-JLK, 2021 WL 5104672, at *6 (D. Colo. Oct. 12, 2021) (emphasis added) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). In Colorado, a breach of contract claim requires proof of a valid contract, breach, and damages. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

In light of the Court's findings above, there is no dispute that the first two elements are met. The undisputed material facts establish that the parties entered into a contract (the Agreement discussed above), *see* ECF No. 261 at 6 ¶ 3; ECF No. 284 at 6 ¶ 3, and no party suggests that the Agreement is unenforceable. Additionally, the Court has now determined that Palmer breached certain of its notice duties described in Section 29.2(b).

However, with respect to the element of damages, Wanzek offers no argument or evidence. Without evidence to establish that Wanzek suffered damages from Palmer's breach, summary judgment is improper. *See Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1034 (10th Cir. 2018), *as revised* (Apr. 13, 2018) ("[W]ithout proffering evidence in support of one of the elements of their breach of contract

---

Vialpando that Palmer's response to the request for admission discussed above was incorrect. While the Court cannot say whether that would have ultimately changed the outcome, as it stands, Palmer offers no evidence beyond its own re-interpretation of the Default Notice. But, as discussed, this is insufficient to rebut Palmer's prior sworn admission to the contrary.

claims, [the] claims fail as a matter of law[.]") (citing *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137–38 (10th Cir. 2016)).[10]

## IV.   CONCLUSION

Consistent with the foregoing, Wanzek's Motion for Summary Judgment on its Third Counterclaim for Relief Against Plaintiff Palmer North America LLC, ECF No. 261, is GRANTED IN PART and DENIED IN PART. Specifically, Wanzek's motion is DENIED IN PART with respect to the damages element of Wanzek's third counterclaim and GRANTED IN PART to the extent that Wanzek has established the existence of a contract and a breach by Palmer of the same in connection with Wanzek's third counterclaim.

Additionally, because the Court has now resolved the first phase of summary judgment motions in this action, the Unopposed Motion for Status or Scheduling Conference, ECF No. 370, is DENIED as moot. In light of the fact that the parties previously agreed to "conduct a mediation with a private mediator" following the Court's ruling on these motions, *id.* at 3, the Court further ORDERS the parties to confer and jointly email the Court within seven days of this Order to confirm the date of the mediation.

DATED this 24th day of July 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[10] Because the Court grants Wanzek the relief it seeks, it declines to address the remaining arguments in its motion, none of which concern any of Wanzek's alleged damages or alter the Court's conclusion.